**UNITED STATES, Appellee,**

v.

**Elijah HOLMES, Jr., Lance Corporal, U.S. Marine Corps, Appellant.**

**No. 29,633.**

U. S. Court of Military Appeals.

July 25, 1975.

---

*Lieutenant Walter A. Smith, Jr.,* JAGC, USNR, was on the pleadings for Appellant, Accused.

*Lieutenant Colonel P. N. Kress,* USMC, and *Lieutenant Mark D. Wigder,* JAGC, USNR, were on the pleadings for Appellee, United States.

## OPINION OF THE COURT

### PER CURIAM:

The appellant, tried by a general court-martial, stands convicted of four specifications of possessing marihuana and four specifications of selling the same substance. Because the acts of possession were simultaneous with the sales in each of the four separate instances charged, they were treated as merged for sentence purposes.

To sustain its burden, the Government found it necessary to resort to two informants who testified about the circumstances of the transactions. No other eyewitnesses were available to tell what occurred. In response to the testimony of the informants, the appellant took the stand on his own behalf and categorically denied any involvement with marihuana or the type of illicit dealings with which he was charged. Additionally, several witnesses attested to his good reputation, and evidence was also produced that reflected unfavorably on the two informants. From the record, therefore, it was apparent that all relevant facts were disputed throughout the trial and the ultimate factual issues were very close. Nevertheless, the military judge intruded into this refining process and injected error that affected the fairness of the trial.

The incidents we find improper have their origin in the recall for rebuttal of a defense witness named Private First Class Tyron L. Austin. His initial testimony during the defense's case-in-chief had corroborated the appellant in that it confirmed that he was not present at the scene when the second group of alleged offenses of March 1, 1973, occurred. Subsequently, he was recalled as a witness in rebuttal and at the completion of his direct examination by defense counsel, the military judge questioned him. Before doing so, however, certain prefatory remarks were made in which the military judge expressed disbelief of the earlier testimony of the witness. Obviously he was of the opinion that Austin had lied and, without developing this fact outside the presence of the court members, the military judge proceeded to restate the witness' earlier testimony. He then informed Austin that he was "suspected, in light of the testimony and the evidence which is before this court, of lying under oath . . . [which] is perjury." After noting this was an offense that could be punished severely, the military judge advised Austin of his rights against self-incrimination. The witness acknowledged that he understood his rights, and the military judge then examined him in a manner that was more inquisitorial than impartial and with the apparent purpose of discrediting him rather than clarifying a point. Furthermore, the judge's conduct persisted. When defense counsel started redirect examination and attempted to rehabilitate the witness, the military judge, on his own motion and solely on the ground that the questioning was leading, interrupted defense counsel's examination. He then remarked:

> [T]his witness has gotten himself in enough trouble already listening to other people telling him what, and suggesting what the answers should be. And, I would appreciate it if you would confine yourself to the appropriate questions with respect to this witness, and assist him in staying out of further trouble.

Whether intentional or not, the foregoing establishes that the military judge shed his required mantle of impartiality, adversely affecting the appellant. He initially accused the witness of perjury and a short time later implied that its inception may have originated with others. Although nei-

ther defense counsel nor appellant were identified as the culprits, the military judge's warning to defense counsel to "confine . . . [himself] to the appropriate questions" at the very least stamped counsel with the stigma of suspicion. These improprieties by the military judge would warrant censure had they taken place in an out-of-court hearing, but their impact was enlarged as they occurred in the presence of the factfinders. In our opinion, there is a fair risk that the judge's remarks indelibly impressed upon the court members the unsupported view that defense had instigated or been instrumental in knowingly obtaining false testimony to support appellant's claim of innocence. Moreover, they improperly affected the appellant's credibility. With such injudicious spoutings imprinted upon the minds of the court members shortly before they closed to deliberate on their findings, any semblance of a fair trial disappeared.[1]

The decision of the Court of Military Review is reversed and the findings and sentence are set aside. The record is remanded to the Judge Advocate General of the Navy. A rehearing may be ordered.

---

1. *See United States v. Clower,* 23 U.S.C.M.A. 15, 18, 48 C.M.R. 307, 310 (1974).