**UNITED STATES**

**v.**

**Specialist Four E–4 Daniel W. WILSON, 561–02–5964, U. S. Army, Regional Personnel Center, APO New York 09166.**

**CM 433508.**

U. S. Army Court of Military Review.

Sentence Adjudged 25 March 1975.

Decided 5 Oct. 1976.

Appellate Counsel for the Accused: CPT Frank R. Newett, JAGC; CPT John R. Osgood, JAGC; MAJ Richard J. Goddard, JAGC; COL Alton H. Harvey, JAGC.

Appellate Counsel for the United States: CPT Nancy M. Giorno, JAGC; CPT William A. Poore, JAGC; CPT Lee D. Schinasi, JAGC; MAJ John T. Sherwood, Jr., JAGC; LTC Donald W. Hansen, JAGC.

OPINION OF THE COURT

O'DONNELL, Judge:

Despite his pleas of not guilty the appellant was convicted by a court with members of possession of methamphetamine, possession of marijuana and conspiracy to sell methamphetamine in violation of Articles 92, 134 and 81, 10 U.S.C. §§ 892, 934 and

881, Uniform Code of Military Justice. The convening authority approved the adjudged sentence to confinement at hard labor for four years, total forfeitures, reduction to the lowest enlisted grade and a dishonorable discharge.

 Appellate defense counsel have assigned numerous errors. However, our resolution of the case requires an in depth discussion of only one of these issues.[1] The appellant contends and we agree that the military judge abandoned his impartial role by repeatedly aiding the prosecution and hindering the presentation of the appellant's defense to an extent which we believe created more than a fair risk that the appellant was denied a fair trial.

As is typical of drug-ring cases of this nature, most of the evidence presented by both sides at trial came from so-called "interested parties," such as those involved in the crimes or in the investigation of the crimes. One co-conspirator testified for the prosecution. Another became the major defense witness. Various criminal investigators supplied information concerning the search and subsequent interrogations. Conflicting versions concerning the appellant's role or lack thereof in the various drug procurement and distribution operations were presented. The validity of several pretrial statements was debated as counsel explored the possibilities of accusations motivated by the desire for self-preservation or revenge. In short, the inevitable interweaving of numerous persons and events resulted in a complicated contested trial, the nuances of which need not be further detailed herein.

Despite ample inquisitorial activity on the part of counsel for both sides, the military judge himself queried every significant prosecution and defense witness. If written inquiries were forthcoming from the court, they were often embellished and expanded by the judge to consume pages of the record. While many of the judge's questions were appropriate in that they clarified otherwise confusing testimony,[2] others clearly were not. By the sheer number of queries, the military judge made his presence felt and intruded extensively into the adversarial field of the courtroom. However, as the United States Court of Military Appeals recently indicated, it is not the number of questions but their tenor that is determinative. See United States v. Shackleford, 2 M.J. 17 (1976).

Turning to specifics, the military judge affirmatively assisted the prosecution through leading questions to the CID agent who interrogated the appellant, by establishing a link in the chain of custody of the drugs which the trial counsel had overlooked and by eliciting responses that authenticated one prosecution exhibit as a business entry. On more than one occasion the judge assisted the trial counsel by changing the course of his questions in midstream through prompting and other interruptions.

In addition, the trial judge did not limit his interrogation to the elicitation of undeveloped facts. He twice rehabilitated shaky prosecution witnesses after the trial counsel had indicated that he was finished questioning. In one of these instances he dispelled an inference raised by defense cross-examination that a co-conspirator was testifying in order to obtain leniency from the Government. In the other his questioning effectively insured that the court members

---

1. We agree with the appellant that the holding in United States v. Hughes, 24 U.S.C.M.A. 169, 51 C.M.R. 388, 1 M.J. 346 (1976), indicates that, contrary to the views expressed at trial the possession charges are multiplicious for sentencing purposes as the drugs were found in the same room at the same time. We also agree that the trial counsel's closing argument on sentence was sufficiently similar to that condemned in United States v. Mosely, 24 U.S.C.M.A. 173, 51 C.M.R. 392, 1 M.J. 350 (1976), to require curative action with respect to the sentence. We further note that the record reflects the lack of adequate compliance with the rules set forth in United States v. Goode, 23 U.S.C.M.A. 367, 50 C.M.R. 1, 1 M.J. 3 (1975), and Article 54(c), U.C.M.J., as interpreted by United States v. Cruz-Rijos, 24 U.S.C.M.A. 271, 51 C.M.R. 723, 1 M.J. 429 (1976).

2. See paragraphs 54a and b, Manual for Courts Martial, United States, 1969 (Revised edition).

were not left with the impression that another suspect was tricked by the CID into implicating the appellant.

Perhaps even more disturbing than these attempts to aid the prosecution were the judge's various activities in relation to the presentation of the defense's case. During litigation of a search and seizure issue during an Article 39(a) session the judge alluded to facts outside the record of which he was aware from another case he had tried. At that point the civilian defense counsel challenged the judge for cause, which challenge was denied, correctly, we believe. Thereafter relations between the judge and appellant's retained attorney deteriorated. Counsel's request for a recess in which to organize his materials was denied.

A co-conspirator, Specialist Four Paul Dinnetz, who had already been convicted, was the major defense witness. The defense attempted to show by this soldier's testimony that his prior implication of the appellant was a fabrication motivated out of revenge since Dinnetz had believed that appellant had in turn implicated him. The military judge substantially interfered with the evidence given by this witness and thereby colored it and created more than a fair risk that the court members were infected by his attitude of disbelief. The judge interrupted the civilian defense counsel's redirect examination of his major witness with two pages of questions of his own.

Subsequently, after the trial counsel completed recross-examination of Dinnetz, the defense, over protest, was denied the opportunity to further question the witness. In so ruling the military judge stated: "Each counsel has two chances to examine the witness. You had that." The judge then launched a searing and effective cross-examination of his own.[3] It should be noted that despite his two-chance-per-counsel rule, the judge permitted the trial counsel after resting his case to recall Dinnetz for further cross-examination despite the arguments of the defense that by so doing the prosecution was adopting the witness as its own.

The perceived biased questioning and other actions of the military judge caused the defense to move for a mistrial on three occasions. After the military judge had, as previously mentioned, rehabilitated one of the Government's witnesses, counsel for the appellant, in moving for a mistrial, expressed his objection to the judge's lack of impartiality thusly:

"The defense feels compelled to move for a mistrial on the grounds that we believe the manner in which the last questions were asked by the military judge—the tone in which they were put and the manner in which they were asked—was an attempt to rehabilitate for the Government this witness, and to bolster the testimony of this witness. We believe the impression given to the jury makes it appear that the military judge has abandoned his role, and, in fact, we believe the nature of the questions themselves constitutes an abandonment of the military judge's role as an impartial magistrate, goes beyond that of a fact-finder, and in fact constitutes the taking up of the cudgel of the prosecution."

Similar sentiments accompanied the other mistrial motions, the last of which followed substantial interference by the judge with the civilian counsel's direct examination of the detailed counsel who had been excused by the accused and called as a defense witness.

The Court of Military Appeals has repeatedly cautioned that the utmost care must be used when a judge determines that questions should emanate from the bench during a trial. As Chief Judge Duncan opined in *United States v. Clower*, 23 U.S.C. M.A. 15, 18, 48 C.M.R. 307, 310 (1974):

"Although a military judge may question a witness to clarify or develop his testimony where it is necessary to aid the understanding of the court members, the

---

**3.** The judge did, however, permit the defense to ask additional questions following questions by the court members.

impression of partiality must not be created. . . .

"Common among jurors is the propensity to attempt to tune in on and adopt a trial judge's appraisal of the facts. At trial a judge is a positive authority figure symbolizing the very best of the legal profession's relation to the maintenance of justice. Extreme caution must be observed to prevent a joinder of an exposure of a trial judge's view of the facts and a juror's natural curiosity about an affinity for that view from causing any abandonment of each juror's personal fact-finding responsibility."

In the instant case the sympathies of the military judge were not merely subtly transmitted, but were in fact repeatedly broadcast and translated into affirmative action. Thus, the prosecution received not only the side benefits noted by Chief Judge Duncan, but also the sometimes effective services of a "prosecutor." Several of the activities launched by the judge have been specifically condemned in the past.

Reversal has been deemed necessary in instances when a military judge has indulged in questioning that impeaches the testimony of the accused or other defense witnesses. *United States v. Shackleford, supra; United States v. Clower, supra; United States v. Massa,* 49 C.M.R. 586 (A.C. M.R.1974). Furthermore, a bad situation can be made worse when the judge conducts such an inquiry and then restricts defense attempts at rehabilitation. *See United States v. Holmes,* 23 U.S.C.M.A. 497, 50 C.M.R. 577, 1 M.J. 128 (1975). It has also been held that the military judge enters forbidden areas when he poses leading questions the answers to which supply omitted items of proof or lay the foundation for the admission of evidence. *United States v. Taylor,* 47 C.M.R. 445 (A.C.M.R.1973).

As we find more than a fair risk that the proceedings below were impermissibly infected by the numerous improper forays of the military judge into the field of adversarial combat, the appellant's conviction must be reversed.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge JONES and Judge COSTELLO concur.