UNITED STATES, Appellee,

v.

Specialist Four Robert A. MADEY, SSN 146–60–0545, United States Army, Appellant.

SPCM 17023.

U. S. Army Court of Military Review.

26 Aug. 1982.

Colonel Edward S. Adamkewicz, Jr., JAGC, Major Raymond C. Ruppert, JAGC, Captain David M. England, JAGC, Captain Edward J. Walinsky, JAGC, and Captain John Lukjanowicz, JAGC, were on the pleadings for appellant.

Major John T. Edwards, JAGC, Captain Kenneth H. Clevenger, JAGC, and Captain David H. Johnson, JAGC, were on the pleadings for appellee.

Before MILLER, KUCERA and BADAMI, Appellate Military Judges.

OPINION OF THE COURT

KUCERA, Judge:

The appellant was tried by a military judge sitting as a special court-martial. Contrary to his pleas, he was found guilty of attempted possession and sale of amphet-

amines in violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880 (1976). The convening authority approved the adjudged sentence of a bad-conduct discharge, two months confinement at hard labor, forfeiture of $367.00 pay per month for two months, and reduction to the grade of Private E–1.

The appellant urges as errors: (1) the lack of evidence to show that he believed the substance sold was contraband; (2) the improper consideration by the convening authority of matters *dehors* the record; and (3) the abandonment of impartiality by the military judge. A summary of proceedings necessary to the disposition of such errors follows.

On 14 August 1981, a soldier trainee named Vance told his company commander that one Specialist Martin and the appellant were "pushing" illicit drugs to trainees in the company. At the time, Vance was an inpatient at Walson Army Hospital, Fort Dix, New Jersey. The next day, 15 August 1981, Vance agreed to help the law enforcement authorities to set up a controlled drug buy from the appellant. On 21 August 1981, during the afternoon meal, Vance gave the appellant three $20.00 bills in exchange for a bag of 100 black pills. The appellant was apprehended and the three $20.00 bills previously recorded and issued to Vance by the law enforcement authorities were found on his person. Subsequent laboratory analysis disclosed that the pills were composed of caffeine and other noncontrolled substances.

The appellant, on the other hand, testified that on 15 August 1981, he was at Kelly's Bar [1] where Vance approached him and asked for a loan. Although aware that Vance was soon to be discharged, was then in a no-pay status, and had a tendency to go AWOL, appellant nevertheless loaned Vance $60.00. Thereafter, on 21 August 1981, Vance repaid him in the company mess hall. Appellant denied giving Vance any black pills and denied having ever sold illicit drugs.

The credibility of the main Government witness, Vance, was a critical issue. Appellant's position was that the Government's case consisted mainly of Vance's testimony and that Vance was not a truthful and honest person. Defense called two noncommissioned officers who testified that Vance was not trustworthy.[2] Appellant's credibility, on the other hand, was enhanced by the testimony of two noncommissioned officers who testified that the appellant was truthful and honest.[3]

Appellant's alibi was supported by his friend, Private First Class DeMott, who testified that on 15 August 1981, he saw the appellant handing Vance three $20.00 bills at Kelly's Bar. Appellant's alibi began to become unglued when Vance testified in rebuttal that on 15 August 1981 he was a patient at the Walson Army Hospital with intravenous tubes inserted in his arm. The military judge recalled DeMott. DeMott stuck by his previous testimony and continued to maintain that he was positive about seeing the appellant give $60.00 to Vance at Kelly's Bar on 15 August.

After finding him guilty, the military judge acceded to appellant's request that, on account of newly discovered evidence, the defense be allowed to reopen its case on the merits and the military judge reconsider the findings. The newly discovered evidence consisted of testimony by another friend of the appellant, Specialist Mulcahy, that on 15 August 1981, he too was at

1. Testimony of other witnesses indicates that Kelly's Bar is located in Wrightstown, New Jersey.

2. Staff Sergeant Maturi was not able to recall even one instance of Vance having lied to him in the past and did not know whether Vance would lie under oath; Sergeant First Class Amongos did not recall of Vance lying to him and also did not know whether Vance would lie under oath. Both witnesses based their opinion about Vance's truth and veracity mainly on his duty performance and history of frequent AWOLs.

3. During the sentencing portion of the trial the same two noncommissioned officers testified that the appellant's duty performance was outstanding and that he should be retained in the service.

Kelly's Bar. However, unlike the testimony of the appellant and his friend, DeMott, that it was the appellant who handed $60.00 to Vance, Mulcahy testified that he saw Vance hand some money to the appellant.[4] Thereafter, at the request of the military judge, Ramona Keefe, a nurse on duty at the Walson Army Hospital on 15 August 1981 was called by the prosecution. Her testimony left no doubt that on 15 August 1981, Vance was at the hospital having intravenous liquid fed into his arm.

> The military judge then announced that: after listening to and observing the witnesses in this case, I am completely convinced that testimony reflecting the accused loaned $60.00 to Vance on 15 August at Kelly's Bar was totally unbelievable. After listening to and observing the witnesses, I am convinced beyond any doubt that Vance was not in Kelly's Bar at 2200 hours, 15 August 1981, and I expect the government to pursue this matter as regards the testimony of Pfc [sic] DeMott and Specialist Mulcahy....

Once again, the military judge found the appellant guilty of attempted possession and sale of amphetamines.

■ As to the appellant's first contention, we note Vance's testimony about appellant's selling amphetamines—speed—to other soldiers in the unit, confirming to Vance that he would sell him 100 hits of speed, and furtively transferring to Vance a plastic bag containing 100 small black pills. The military judge, who heard the testimony, observed the witnesses and was best situated to evaluate their credibility, specifically found that the appellant had in his possession and sold what he believed to be amphetamines to Vance. We too so find.

■ The matters *dehors* the record which were mentioned in and appended to the staff judge advocate's post-trial review and about which the appellant now complains consist of two sworn statements of appellant's friends, Private First Class DeMott and Specialist Mulcahy who testified in support of appellant's alibi. In their post-trial statements they admitted to having committed perjury by testifying falsely at appellant's behest. Inclusion of these two statements was not addressed by the trial defense counsel in his rebuttal to the staff judge advocate's post-trial review. Further, inclusion of the statements in the review did not result in manifest injustice nor deprive the appellant of any fundamental rights. The content of these statements added nothing new to the substance of the military judge's *sua sponte* findings that the testimony about the alibi "was totally unbelievable." Accordingly, the appellant waived any right to assert this error on appeal. *United States v. Goode*, 1 M.J. 3 (C.M.A. 1975).

Appellant's last contention that the military judge abandoned his impartial role during his inquiries of defense witnesses is also without merit.

■ The trial judge is not a mere figurehead or an umpire in a trial contest. While he can not lay aside impartiality and become an advocate for one side or the other, he can, and in our view sometimes must, ask questions to clear up uncertainties in the evidence or further develop the facts. Paragraphs 54a, b, Manual for Courts-Martial, United States, 1969 (Revised edition); *United States v. Hobbs*, 8 M.J. 71 (C.M.A. 1979); *United States v. Blackburn*, 2 M.J. 929 (A.C.M.R.), *pet. denied*, 2 M.J. 166 (C.M.A. 1976).

■ In the case at hand the military judge asked follow-up questions of witnesses for both sides. After the defense reopened its case once again attempting to persuade the military judge, the fact finder, that on 15 August 1981, Vance was at Kelly's Bar, the military judge asked the trial counsel to call personnel from Walson Army Hospital "to testify as to the probability or possibility of Vance being able to leave the hospital on the 15th of August."

At trial the appellant raised no objection to the military judge's questioning of wit-

---

4. In a post-trial statement Mulcahy admitted to having given perjured testimony as well as inadvertently switching around the story of who was handing the money to whom.

nesses. At this level, his complaint is focused on the military judge's: (1) attempt to elicit a valid basis for a defense witness' testimony reflecting on the truth and veracity of the main prosecution witness, Vance; (2) asking probing questions of a defense witness upon whose testimony the military judge was asked to reconsider his previously announced findings of guilty; and (3) asking two defense witnesses questions bearing on the appropriateness of their testimonial recommendation to the military judge that, in spite of the conviction, the appellant should be retained in service.

Under the totality of circumstances, it is apparent to us that the military judge tried to reconcile and further develop facts which he felt were necessary to his proper resolution of the case. While he did so vigorously, he did not abandon the mantle of judicial impartiality.

The findings of guilty and the sentence are affirmed.

Senior Judge MILLER and Judge BADAMI concur.