UNITED STATES, Appellee,

v.

Private E–2 William E. THOMAS, SSN 229–92–3382, United States Army, Appellant.

SPCM 18406.

U.S. Army Court of Military Review.

30 May 1984.

Captain Peter R. Huntsman, JAGC, argued the cause for appellant. With him on the brief were Colonel William G. Eckhardt, JAGC, Colonel R. Rex Brookshire II, JAGC, and Captain Michael T. Kelly, JAGC.

Captain Kurt J. Fischer, JAGC, argued the cause for appellee. With him on the brief were Colonel James Kucera, JAGC, Lieutenant Colonel Thomas M. Curtis, JAGC, and Major Joseph A. Rehyansky, JAGC.

Before McKAY, COKER and WATKINS, Appellate Military Judges.

## OPINION OF THE COURT

WATKINS, Judge:

Contrary to his pleas, the appellant was convicted by a special court-martial with officer members of larceny (of $380.00 in United States currency, the property of a Private Gary W. Smith), aggravated assault (two specifications), and failure to repair (two specifications), in violation of Articles 121, 128, and 86, Uniform Code of Military Justice, 10 U.S.C. §§ 921, 928, and 886 (1976), respectively. The adjudged, and approved, sentence extends to a bad-conduct discharge, confinement at hard labor for three months, forfeiture of $367.00 pay per month for three months, and reduction to the grade of Private E–1.

*Pro se,* the appellant challenges the sufficiency of the evidence, the conduct at trial of the military judge, and alleges that his Fourth and Fifth Amendment rights were violated. In the language of the appellate pleadings, appellate defense counsel assign error below as follows: (1) Private Thomas was denied his Sixth Amendment right to confront the witnesses against him by the military judge's improper and prejudicial limitation on the defense counsel's cross-examination; (2) Where appellant was charged with, *inter alia,* larceny and robbery (Charges I and II), the military judge erred by refusing to admit testimony as to appellant's good character and trustworthiness; (3) The military judge erred by refusing to allow trial defense counsel, in his argument on findings, to comment on the anticipated instructions; (4) The military judge erred by denying the defense motion to suppress appellant's unwarned statements and all derivative evidence (Charge I and its specification); (5) The military judge abused his discretion by his prejudicial conduct of the trial proceedings; (6) The evidence is insufficient to prove beyond a reasonable doubt that Private Thomas committed the offenses of 21 February 1982 (Charge II and its specification and Specifications 1 and 2 of Charge III); (7) The announced findings do not reflect that the required percentage of two-thirds of the members concurred in each finding

of guilty, nor does the findings worksheet, Appellate Exhibit LIII, attest to the required percentage; (8) The military judge abandoned his impartial role and became an advocate for the prosecution when he asked the key foundational question which allowed impeachment of Private Thomas; (9) The military judge erred by refusing to give the requested instruction on mistake of fact (Additional Charge); (10) The evidence is insufficient to prove beyond a reasonable doubt that Private Thomas stole Private Smith's money (Charge I); (11) The military judge erred by refusing to dismiss Specification 2 of Charge III (aggravated assault on Private Butler), which was at the outset plainly multiplicious with Charge II and its specification (robbery of Private Butler), as the former was always included within the latter, and thus no exigencies of proof existed which would allow such multiplicious charges to be presented initially to the members; (12) The two specifications of the Additional Charge are fatally defective as they each fail to allege the time that Private Thomas failed to go to his appointed place of duty; and (13) The military judge abused his discretion by denying a motion for a mistrial.

■ Our review of the record of trial pursuant to Article 66, Uniform Code of Military Justice, 10 U.S.C. § 866 (1976) discloses that, because certain rulings, comments, and actions of the trial judge injected error and materially affected the fairness of the trial, the findings of guilty must be set aside.

This case was tried at Aberdeen Proving Ground, Maryland, and it is apparent from the record that the detailed defense counsel had appeared before this military judge previously. Indeed, there are indications that the trial judge's extraordinarily active role in the evidence-adducing process and his unusually harsh manner in addressing the defense counsel are reflective of an attempt on the part of the judge to ensure that the presentation to the triers of fact of the prosecution case was not overshadowed by that of the defense. The following excerpts from the record of trial are illustrative of the trial judge's statements and actions in this regard. Collectively, they represent an unwarranted and prejudicial departure from the requisite standard of even-handedness and impartiality.

At a pretrial session convened pursuant to Article 39(a), Uniform Code of Military Justice, 10 U.S.C. § 839(a)(1976), a defense motion to suppress was litigated relating to the admissibility of certain unwarned admissions made by the appellant to Military Police Investigator (MPI) Allinder on 16 December 1981 and of a large sum of money seized from the appellant on the same date. Following the direct and cross-examination of MPI Allinder, the sole prosecution witness on the motion, the military judge propounded approximately 125 questions of his own prior to ruling, largely adverse to the interests of the defense, on the motion to suppress. In announcing his ruling on the motion—which was also determinative insofar as the admissibility of important derivative evidence—the trial judge expressly made reference to, and apparently relied upon, extra-record knowledge and information gained from the trial of another accused some time prior to the instant court-martial. Pertinently, the military judge's explanation included the following language:

> MJ: *I tried a case not too long ago at a training installation wherein he who reported his money stolen, starting a full-blown investigation found it somewhere else. We are dealing with soldiers in their first six months to a year in the Army who have never had so much money before;* who put it somewhere and then look for it every ten minutes for a while to make sure it's still there; who check it when they come back from the shower; who check it before they go to the shower; who go to where they think they usually put money and don't find it there and forget they put it

someplace else because they were trying to hide it.[1]

(Emphasis added).

Shortly thereafter, at the same pretrial hearing, the trial counsel successfully sought the assistance of the military judge in formulating a prosecution theory of admissibility of certain parol statements purportedly made by third parties to MPI Allinder. These statements had previously been excluded on the basis of hearsay, at least as far as the testimony of the prosecution witness Allinder was concerned. After explaining the evidentiary problem to the trial counsel for a second time and once again offering the prosecution a continuance (for the purpose of securing the witnesses necessary to establish the matters in issue), the trial judge stated that he did not intend to prosecute the case for the trial counsel. In his next breath, however, the judge proceeded to supply the requested information. As reflected in the record of trial, this colloquy was as follows:

TC: [W]e would ask if there is another basis for which we could admit those statements?

MJ: Can you think of one?

TC: No, your Honor.

MJ: I can't either. *I'm not going to prosecute the case for you. I'm not going to think up bases for getting that in.*

TC: We'll proceed, your Honor.

MJ: *But if you'll look at 803(24) looks like the only place to get it in and no effort has been made to obtain the information in any other way.*

TC: Yes, your Honor.

(Emphasis added.)

 Another pretrial evidentiary ruling by the military judge, which improperly hindered the presentation of the defense case, warrants comment. In remarks which we broadly construe as a motion *in limini,* the trial counsel questioned the relevance on the merits of the proffered testimony of a noncommissioned officer who had previously served with the appellant at Fort Dix and who was offered as a defense witness to testify as to the appellant's "character and truthfulness." The trial judge directed the question of relevance to the detailed defense counsel, and the following ensued:

MJ: What's the relevance?

DC: Your Honor, the witness would be offered to testify as to the fact that he knew him at Fort Dix from September to December and that the individual is a law abiding and moral person in the community. He would be offered to testify to that and also be offered to testify that he knew him at Fort Dix during that same time period and in his opinion Private Thomas was a trustworthy and honest person and he would believe his word.

MJ: *Law abiding citizen testimony isn't relevant any more.*

DC: Defense does not agree with the court's ruling on that. There were some court cases out of the Fifth Circuit that is allowing character testimony. I also understand there are some other cases that are apparently not, but the defense would submit that it is relevant under the Military Rules of Evidence.

MJ: I understand your position. *Law abiding citizen testimony will not be allowed. Truth and veracity, if it is attacked by witnesses or otherwise— otherwise generally means searing cross-examination.* We'll have to cross that bridge when we come to it. Of course he has to testify too.

DC: Oh yes, your Honor.

MJ: For this to be relevant at all.

DC: I understand.

(Emphasis added.)

As now conceded by appellate counsel for the appellee, the judge's ruling was imper-

---

**1.** Reliance by the trial judge upon knowledge and information from outside the record was condemned by a majority of the judges of the United States Court of Military Appeals in *United States v. Conley,* 4 M.J. 327 (C.M.A.1978) on the basis that such practice was in contraven-
tion of the Article 26(d), Uniform Code of Military Justice, 10 U.S.C. § 826(d) (1976) proscription against the military judge acting as a witness for the prosecution. The court-martial proceedings were held to be void.

missibly restrictive and erroneous. Whereas evidence of a person's character or a trait of a person's character is generally inadmissible for the purpose of proving that the person acted in conformity therewith on a particular occasion, such evidence is admissible under a well-established exception to that general rule whenever the evidence is of a particular trait of character of the accused and is offered by the accused, or by the prosecution to rebut the same. Mil.R.Evid. 404(a)(1). The failure of a military judge to admit evidence of an accused's good military character and his character for lawfulness under the cited rule of evidence constitutes error. *United States v. McNeill*, 17 M.J. 451 (C.M.A. 1984); *United States v. Piatt*, 17 M.J. 442 (C.M.A.1984); *United States v. Clemons*, 16 M.J. 44 (C.M.A.1983); *see also United States v. Angelini*, 678 F.2d 380 (1st Cir. 1982); *United States v. Hewitt*, 634 F.2d 277 (5th Cir.1981). We note that the trial judge's ruling was somewhat vague and inconclusive regarding the proffered defense testimony as to the appellant's honesty and trustworthiness. In a case such as this one where the accused was charged, *inter alia*, with larceny and robbery, there should be no question concerning the admissibility on the merits of such evidence. *United States v. Meadow*, 14 M.J. 1002, 1005 (A.C.M.R.1982); *see also United States v. Presley*, 2 U.S.C.M.A. 414, 9 C.M.R. 44 (1953); *United States v. Bell*, 11 C.M.R. 605 (N.B.R.1953).

■ Subsequent to arrival of the members and formal assembly of the court-martial, the detailed defense counsel in routine fashion undertook *voir dire* examination of the members to ascertain whether a basis for challenge existed. The questioning process proceeded smoothly until the defense counsel attempted to frame for the members a question relating to whether they would equate "mere presence" with proof beyond a reasonable doubt. The military judge interrupted at that point, indicated that he would not allow the question, and directed the defense counsel to proceed. This portion of the verbatim transcript reads as follows:

DC: On the other larceny charge, what we have is an alleged barracks larceny—that's in the first charge and specification. *There will be testimony that Private Thomas was seen in that area. Is there anyone who would be willing to accept his mere presence as a basis to overcome the presumption of innocence and find Private Thomas guilty beyond a reasonable doubt?*

MJ: *I'm not going to allow that question because it's getting into a legal instruction.*

DC: What I'm asking is—

MJ: *I understand what you're asking, and I'm not going to allow the question. Move along.*

DC: May I rephrase the question?

MJ: If you want to ask them if they'll follow instructions of the court, that's fine.

DC: No, your Honor, I'm sure the court is going to do that.

MJ: *So am I.*

(Emphasis added.)

Disregarding both the manner in which the trial judge corrected the defense counsel in front of all the parties to the trial and the fact that the judge did not offer to instruct upon the common principle of law involved so that the concern of the defense counsel could be resolved, the judge's restrictive approach to *voir dire* examination differs markedly from authoritative guidelines on the subject. For example, the Court of Military Appeals in *United States v. Tippit*, 9 M.J. 106, 107 (C.M.A.1980) (per curiam), stated that "[t]he limited number of peremptory challenges available in courts-martial gives special importance to the challenge for cause. Furthermore, it is appropriate to allow considerable leeway to counsel in the *voir dire* examination of court members as they seek to ascertain whether a challenge for cause should be asserted." *See also* Article 41, Uniform Code of Military Justice, 10 U.S.C. § 841 (1976); paragraph 62*b*, Manual for Courts-Martial, United States, 1969 (Revised edition); Fed.R.Crim.P. 24(a), 18 U.S.C. (1976);

*cf. United States v. McMillion,* 16 M.J. 658 (A.C.M.R.1983) (military judge abused his discretion by summarily denying defense request to reopen *voir dire* examination).

A more serious evidentiary problem at trial resulted from the failure of the trial counsel to follow an oral pretrial directive of the military judge concerning the scope of direct examination of two prosecution witnesses. At a pretrial session attended by all the parties to the court-martial except the members, the defense counsel requested that two prosecution witnesses, MPI Allinder and Captain Bierlich, be cautioned prior to testifying that they were not to disclose in open court that the appellant had invoked his rights prior to trial. The judge specifically instructed the trial counsel to so caution the two witnesses. The record reflects that the trial counsel failed to do so with the result that when Captain Bierlich testified, in the general context of the failure-to-repair allegations (Specifications 1 and 2 of the Additional Charge), he disclosed that at the time he questioned the appellant about these alleged offenses the appellant admitted to "swapping" duty but refused to respond to his inquiry about "selling" duty. Apparently desirous of moving for a mistrial but recognizing that the objectionable invocation of rights disclosure had occurred before the triers of fact, the detailed defense counsel promptly requested permission to approach the bench. The trial judge elected not to honor the defense request and, instead, virtually compelled the defense counsel to present the mistrial motion in open court. Moreover, even before the basis for the motion was developed by counsel and argument was held thereon, the judge stated in the presence of the members that the motion would probably be denied. The relevant portion of the record of trial is as follows:

DC: May I approach the bench, your Honor.

MJ: *Why?*

DC: I just wanted to discuss something with the judge.

MJ: *What's that?*

DC: Your Honor, in view of the last question that was asked and the forewarning that the government had we would ask for a mistrial of these charges.

MJ: We'll take that up after the court's been excused. *I'm not inclined to grant it.* Do you have any cross-examination?

(Emphasis added.)

Ultimately, the military judge convened an out-of-court session for the purpose of considering the defense motion for a mistrial, but not before Captain Bierlich had been cross-examined by the defense counsel and, in addition, had responded to two questions by the members and six others by the judge himself. At that time the trial judge pressed the detailed defense counsel for a statement of the legal basis for the mistrial motion. In the verbal exchange that followed, it appears that the defense counsel responded appropriately but that the military judge resorted to contentious and snappish language and that he once again lapsed into a consideration of matters not in evidence or otherwise relevant in this case:

MJ: What's the problem then?

DC: Well the problem is we covered it at a 39(a) session and now the court members are even asking questions—

MJ: Captain O'Boyle, please don't repeat yourself. *I realize that your tendency is not to listen to me, but you're going to have to try as the case goes on.*

DC: I'm sorry, your Honor.

MJ: *I also have problems with your standing to complain in view of some of the tactics I've seen in previous cases.* We've discussed that in court and out of court, but assuming that you have standing to complain because you are representing this accused, what is the legal basis for the mistrial here? Why is this mistrial material and not instruction material? You ask the question will they disregard the right to remain silent; they've just heard that he exercised it.

DC: Prejudicial, the way it came out. Here he is in the middle of an interview

and all of a sudden he invokes the right to stop—that is most prejudicial. If somebody had invoked it from the beginning, personally I think that's less incriminating than someone who begins to get involved in a tangled web with an interrogator and at that point in time says I stop.

MJ: What are the legal grounds for mistrial, counselor?

DC: Prejudicial effect on the court.

MJ: Where does it say that—what's the basis? *You're talking off the top of your head.*

(Emphasis added.)

During the cross-examination of the alleged robbery victim on the merits of the case, the trial judge became noticeably agitated and impatient with the detailed defense counsel. At one point, he abruptly interrupted the questioning, dispatched the members to the deliberation room, and began to rebuke the defense counsel concerning the form of his questions on cross-examination. The military judge indicated that his principal concern was that the issues were "justly decided." What to him were "patently false leading questions" are to us proper questions on cross-examination designed to fix the nebulous testimony of the witness Smith as to whether he had or had not counted the money in his pocket when he withdrew it, along with his orders, at various out-processing stations in conjunction with his departure from the installation. A portion of this colloquy follows:

MJ: This court must justly decide the issue. I have to see that the issue is justly decided and *when one of the parties to the proceedings isn't living up to his duties as an officer of the court, that's awfully hard to do. I get testy* —it makes the court members uncom-

fortable—the proceedings don't go well, and I have no guarantee or appreciation that they are being justly decided. That's all I'm here for, to see that the proceedings are justly decided, *and you're an officer of the court.*

DC: I understand that, your Honor.

MJ: *Start acting like one.* I really am offended by these patently false leading questions. *I know that a lot of people in TDS*[2] *think some of these things are close calls, I don't know close to what.* I can understand leading questions, but when you know the answer is something different and you're just testifying to something different than what he's going to say and you don't know it's different from what he's going to say I can't understand how you can say that this is possible.

DC: I'm confused, your Honor. When I was learning to do cross-exam it was make your argument in your cross-exams. I try to do that. My argument is going to be—

MJ: *Well, if you learned cross-examination from Roy Cohn that's one thing, but I'm not going to allow it. Do you understand my position?*

DC: Yes, I do, your Honor. I beg the court's indulgence.

(Emphasis added.)

As the out-of-court session terminated and the members were being recalled, the military judge further admonished the trial defense counsel, as follows: "I'm prepared to limit the form of the questions on cross-examination, if necessary. It is not an unlimited right to testify."

Even when monitoring the presentation of the evidence, as it was clearly his duty to do, the military judge was openly critical

**2.** "TDS" is a military acronym for Trial Defense Service. The U.S. Army Trial Defense Service (USATDS) is an activity of the U.S. Army Legal Services Agency (USALSA), a field operating agency of The Judge Advocate General. Operational control and supervision of USATDS are exercised by the Assistant Judge Advocate General for Civil Law. Command functions other than operational control are provided by the Commander, USALSA. The primary mission of USATDS is to provide specified defense counsel services for Army personnel, whenever required by law or regulation and authorized by The Judge Advocate General or his or her designee. Chapter 6, Army Regulation 27–10 (1 September 1982); *see also* paragraph 2–11*d* (3), Department of the Army Pamphlet 27–21 (15 May 1980); "TDS: The Establishment of the U.S. Army Trial Defense Service," 100 Mil.L.Rev. 4 (1983).

of the defense counsel. At one point, for instance, the defense counsel ran afoul of the trial judge when he attempted on cross-examination to clarify an unresponsive answer by a prosecution witness. The question called for an answer from the present memory of the witness. Instead, the witness sought to rely upon a prior written statement which was not in evidence. The interruption by the trial defense counsel was apparently for the purpose of clarifying which statement was being discussed and getting the witness back on point. Notwithstanding, the matter was handled as follows by the military judge in open court:

Q: [DC] Indicated that you weren't sure that Thomas was there on the 20th?

A: Right.

Q: You said that all the nights got confused in your mind?

A: Yes.

Q: Isn't that also possible when you were interviewed by the CID after this incident, you had the nights confused as to which day it was?

A: I gave it some thought since I've been back from Germany. Like I said, it's been quite a while, but there on my statement, you know, I said that Thomas was actually there, and—

Q: That was the statement you gave to the CID was it not?

MJ: *Let him finish the response he was giving there, Captain O'Boyle and I'd rather not say that too many more times* (emphasis added).

When the direct and cross-examination of this prosecution witness had been completed, the military judge actively entered the evidence-gathering process, ostensibly in an effort to rehabilitate the witness. Surprisingly, the trial judge suggested an underlying rationale for the imprecise testimony of the witness: one which was not supported by the evidence, had not been the subject of inquiry or comment by counsel for either side, and was promptly repudiated from the witness stand by the witness himself. The impropriety of such a speculative inquiry by the military judge,

particularly before the members, is self-evident.

Q: [MJ] *Private Chandler, I've never been a witness at a court-martial, I don't know quite what a witness goes through. I've thought about it a lot, and I'm not questioning your manhood or anything like that, but is it possible that some of the difficulty had by you recalling Friday was grounded in fear of Private Kelly?*

A: No, I don't think it had nothing to do with that.

Q: Basically what you testified to here today?

A: Yes—memory.

(Emphasis added.)

The cross-examination of another prosecution witness was also abruptly interrupted by the military judge, who again admonished the trial defense counsel in the presence of the members. On this occasion, the judge's threat to restrict appellant's right of cross-examination was both more public and more explicit than before. This portion of the transcript reflects that any evidentiary transgression by the defense counsel was relatively minor. He had just addressed a yes-or-no-type foundational question to an opposing witness, and the reply was completely unresponsive. The defense counsel then attempted to frame the inquiry even more narrowly, in order that an appropriate response could be obtained. The following extract from the record of trial indicates to us that the trial judge was hypersensitive to perceived evidentiary failings on the part of the trial defense counsel and that, even in open court, his approach in dealing with that counsel was dogmatic and heavy-handed.

Q: [DC] Have you made statements earlier that there were as many as three people giving you a hard time?

A: That was on a statement, but it wasn't—it was just like compressing the statement, kind of, and I said—

Q: You did make a statement to the CID that there were three individuals harassing you?

MJ: *Do not interrupt the witness. Are you with me?*

DC: Yes, your Honor.

MJ: *You keep doing that, I will restrict your right to cross-examine. I'll ask the questions myself and have you submit them in writing.*

DC: All right, your Honor.

(Emphasis added.)

▉ Although, as noted above, the facts in this vigorously contested case were determined by a panel of commissioned officers and not by the detailed military judge, much of the evidence was adduced by the judge himself. A conservative count indicates that the trial judge propounded more than 375 questions to prosecution and defense witnesses on the merits of the case alone. Frequently, it appears, his questions and comments tended to reflect favorably upon the prosecution case and to cast the defense case in a more disadvantageous light. More particularly, the military judge personally asked more than 35 questions of the appellant at trial. The tenor of his questions was such as to highlight inconsistencies in the defense case and to focus attention, in a very direct manner, upon the appellant's credibility. Moreover, there can be little question that the judge incorporated into his questions of the appellant on the merits information about him which had been garnered when the motion to suppress was litigated in an out-of-court session prior to trial. Under these circumstances, questioning the appellant in open court on the basis of such information was improper. *Cf. United States v. Shackelford,* 2 M.J. 17 (C.M.A. 1976); *United States v. Sneed,* 2 M.J. 795 (A.C.M.R.1976); *United States v. Barben,* 14 U.S.C.M.A. 198, 33 C.M.R. 410 (1963); *Kercheval v. United States,* 274 U.S. 220, 47 S.Ct. 582, 71 L.Ed. 1009 (1927) (utilization of evidence procured during providence inquiry to later convict an accused whose pleas of guilty had been rejected, was improper and can constitute reversible error). By way of illustration, the judge was well aware that Military Police Investigator Allinder had testified at the pretrial session on the motion that the appellant's explanation for the large sum of money ($610.00) that he had on his person on 16 December 1981 was that it had come in part from the proceeds of an insurance policy sent to him by his mother and in part from money he had won gambling in barracks. In counsel-like fashion at trial, the military judge inquired into, and ferreted out, what he obviously regarded as an inconsistent statement on the part of the appellant. Significantly, neither the subject of a prior inconsistent statement nor evidence in support thereof had been mentioned during the direct or cross-examination of the appellant. The trial judge improperly focused attention upon this important credibility issue, as follows:

Q: [MJ] Was the source of the money you had on the 16th of December 1981 the payments you received from Finance?

A: Finance and Fort Dix, New Jersey, sir.

Q: From US Army Finance somewhere?

A: Yes sir, it was, sir.

Q: *Have you ever told anybody anything different from that?*

A: Excuse me, sir.

Q: *Have you ever told anybody anything different from that?*

A: No sir, not that I can remember, sir.

(Emphasis added.)

Perhaps the most glaring and conspicuous negative signal from the military judge to the members of the court-martial concerning the credibility of the appellant occurred shortly before counsel for both sides rested on findings. At the conclusion of the prosecution evidence in rebuttal, the trial defense counsel moved for a brief recess. A reading of the record suggests that he was confronted at that juncture with tactical decisions as to whether to present evidence in surrebuttal and, if so, whether to do so by means of additional testimony from the appellant. The judge, who was obviously disinclined to grant the defense motion, precipitated yet another open-court verbal exchange with the defense counsel. This colloquy ended with a

pointed question from the trial judge, the thrust of which was that the requested recess might be used by the defense to formulate changes in the appellant's prior sworn testimony. In pertinent part, this portion of the transcript is as follows:

MJ: Do you have surrebuttal?

DC: I do. I would like to request a brief recess, though.

MJ: Why?

DC: I would just like to.

MJ: Are you surprised by anything you've heard?

DC: Well—somewhat, your Honor.

MJ: Do you wish to interview those witnesses?

DC: No, there is no witness I want to interview.

MJ: *Will it change your accused's testimony* (emphasis added)?

Apparently the impact of this improper and prejudicial inquiry by the military judge was readily perceptible to all of the parties to the court-martial. The judge immediately altered his attitude with respect to the pending defense motion and declared a five-minute recess. Both in the out-of-court session that followed and before the members when the trial resumed, the judge attempted to posit a more acceptable connotation of his earlier question about the appellant possibly changing his testimony. His explanation, which he characterized as "editorial comments," served more to highlight and underscore his obvious disdain for the appellant's credibility than to purge the resulting prejudice in our opinion.

The severe evidentiary constraints which the military judge placed on the trial defense counsel throughout the trial were also manifest during final argument on findings. Twice the judge interrupted the defense counsel as he attempted to relate the evidence before the court-martial to the applicable law. In the former circumstance, the defense counsel was attempting to argue that the defense evidence in support of the alibi and identification issues gave rise to serious factual questions concerning the ability of opposing witnesses to see, perceive, and recollect. The trial judge promptly intervened, and his open-court remarks were as follows:

MJ: I'm going to interrupt and point out that I will do all the instructing in this case, now if you wish to argue the facts and that they don't establish identification, that's fine. *I will not tolerate elements of the offense or instructions on the law in argument* (emphasis added).

DC: Can I touch upon certain things?

MJ: You don't have to. Argue the evidence.

Moments later, in the general context of the robbery specification, the defense counsel sought to argue the obvious point that there could be no robbery of $30.00 in United States currency if the alleged victim did not in fact possess such a sum of money. Once again, the military judge interrupted the detailed defense counsel and, in the presence of the entire court-martial, sought to redress the perceived infringement upon his judicial prerogatives. The transcript reflects the following in this regard:

DC: Also, as far as the robbery, there has to be sufficient testimony for you to find that beyond a reasonable doubt that there was in fact property to be taken.

MJ: *Captain O'Boyle, I will instruct on the law. You may talk about the evidence.*

DC: Can I make reference to the reasonable value.

MJ: If you want to say to them that you can't find beyond a reasonable doubt that the property was taken, that's fine. *Do not touch on elements of the offenses or instructions on the law.* Argue the evidence.

(Emphasis added.)

Although the trial judge was correct in stating that instructions on findings should emanate from the judge himself, his remarks to the effect that counsel were prohibited from "touching upon the elements of the offenses or instructions" were legally overbroad and at odds with the general rule of military practice that reasonable latitude should be allowed counsel in

presenting their arguments. Paragraph 72 *b*, Manual for Courts-Martial, United States, 1969 (Revised edition). Additionally, a note to Appendix 8*b* of the Manual provides that "[e]ither the TC or DC may call to the attention of the court any matters likely to be overlooked by it, or make any reasonably pertinent argument on the facts of the case *and how they relate to the law involved* " (emphasis added). *See also United States v. Leibold*, 6 C.M.R. 631, 634 (A.F.B.R.1952).

In addition to the judicial opinions and evidentiary principles mentioned above, we deem it appropriate to review in general terms the following precepts and guidelines concerning the courtroom deportment of the military judge.

Canon 3 A(3) of the Code of Judicial Conduct, American Bar Association (August 1982) prescribes that: "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control." A Commentary to this canon effectively discredits the notion that fairness and patience must sometimes be tempered or compromised in the interest of judicial efficiency: "The duty to hear all proceedings fairly and with patience is not inconsistent with the duty to dispose promptly of the business of the court. Courts can be efficient and business-like while being patient and deliberate."

Corresponding guidelines are found in Chapter 6, Special Functions of the Trial Judge, *American Bar Association Standards for Criminal Justice* (Second Ed., 1980). For example, Standard 6–3.4, entitled "Judge's responsibility for self-restraint," provides:

The trial judge should be the exemplar of dignity and impartiality. The judge should exercise restraint over his or her conduct and utterances. The judge should suppress personal predilections, and control his or her temper and emotions. The judge should not permit any person in the courtroom to embroil him or her in conflict, and should otherwise avoid conduct which tends to demean the proceedings or to undermine judicial authority in the courtroom. When it becomes necessary during the trial for the judge to comment upon the conduct of witnesses, spectators, counsel, or others, or upon the testimony, the judge should do so in a firm, dignified, and restrained manner, avoiding repartee, limiting comments and rulings to what is reasonably required for the orderly progress of the trial, and refraining from unnecessary disparagement of persons or issues.[3]

A related Commentary indicates that this standard seeks to articulate notions which go beyond the rubric that the law enforcer must himself or herself respect the law. It emphasizes the point that the conduct of the trial judge sets the tone of the proceedings and that, even when deliberately provoked, the trial judge must remain an example of proper deportment and respond reasonably and with composure.

These common-sense guidelines have been incorporated into military law by means of executive order:

The military judge shall preside over each open session of the court-martial to which he has been detailed. He takes appropriate action in the open sessions of the court in order that the proceedings may be conducted in a dignified, military manner. He is responsible for the fair and orderly conduct of the proceedings in accordance with law.

Paragraph 39*b* (1), Manual for Courts-Martial, United States, 1969 (Revised edition). The same paragraph of the Manual prescribes the conditions under which the military judge may actively intervene in the conduct of trial:

the role of the prosecution and the defense. The court should not express or demonstrate any personal preferences or opinions."

---

**3.** This language is similar in content to that found in National District Attorneys Association, National Prosecution Standards, 17.1(C)(4) (1977): "The court should display respect for

The military judge may properly intervene in a trial of a case to prevent unnecessary waste of time or to clear up some obscurity. He should bear in mind, however, that his undue interference or participation in the examination of witnesses, or a severe attitude on his part toward witnesses, may tend to prevent the proper presentation of the case or hinder the ascertainment of the truth.

Consultation between the military judge and counsel in court is often necessary, but the military judge should avoid controversies which are apt to obscure the issues before the court. In addressing counsel, the accused, witnesses, or the court members, he should avoid a controversial manner or tone. He should avoid interruptions of counsel in their arguments except to clarify his mind as to their positions, and he should not be tempted to the unnecessary display of learning or a premature judgment.

*Id.*, paragraph 39*b* (4).

■ It is well settled that in appropriate circumstances a trial judge may take appropriate action to obtain additional evidence. *Id.*, paragraph 54*b*. "In so doing, however, the court must be careful not to depart from an impartial role." *Id.*

Decisional law on this subject is also instructive. It is important to bear in mind, however, that the instant case is not one in which the statements and actions of the trial judge can be evaluated in light of his judicial responsibilities and prerogatives as the trier of fact. *Cf. United States v. Hobbs*, 8 M.J. 71 (C.M.A.1979); *United States v. Madey*, 14 M.J. 651 (A.C.M.R. 1982); and *United States v. Blackburn*, 2 M.J. 929 (A.C.M.R.), *pet. denied*, 2 M.J. 166 (C.M.A.1976) (military judge alone cases).[4] Rather, it is one in which the fact-finding function was performed by a panel of commissioned officers. Accordingly, the words and actions of the military judge must be analyzed in terms of their impact upon

these lay judicial personnel. As accurately observed many decades ago:

[I]t is a matter of common knowledge that jurors hang tenaciously upon remarks made by the court during the progress of the trial, and if, perchance, they are enabled to discover the views of the court regarding the effect of a witness' testimony or the merits of the case, they almost invariably follow them.

Commentary to Standard 6–3.4, *American Bar Association Standards for Criminal Justice* (Second Ed., 1980) (quoting *State v. Philpot*, 97 Iowa 365, 66 N.W. 730, 732 (1896)).

More than a decade ago, in *United States v. Taylor*, 47 C.M.R. 445 (A.C.M.R. 1973), this Court found prejudicial error and dismissed the charges because the record of trial reflected that the military judge had abandoned his impartial role as the judge and assumed the role of an advocate to perfect the case against the accused. The comprehensive and well-documented opinion of Senior Judge Thomas summarized the applicable law as follows:

The trial judge has the right (paragraphs 39*b* and 54*b*, MCM 1969 (Rev.)), and in some instances the duty (paragraph 54*a*, MCM 1969 (Rev.)), to question a witness. *United States v. Marshall*, 12 USCMA 117, 30 CMR 117 (1961); 98 C.J.S., Witnesses § 348. However, the judge must conduct his examination in an impartial manner (paragraph 54*b*, MCM 1969 (Rev.)), and he should not by the form or content of the question, or the extent of questioning, show bias on his part, or intimate his personal opinion as to the merits of the case, the credibility of a witness, or the weight or sufficiency of the evidence. *Connley v. United States*, 46 F2d 52 (CA9 1931); *Callahan v. United States*, 35 F2d 633 (CA10 1929); *Glover v. United States*, 147 F

---

**4.** Appellate military tribunals, even in cases which at the trial level were tried by military judge alone, have emphasized that the trial judge must avoid the existence of unfairness in the courtroom and, additionally, the appearance

thereof. *See e.g., United States v. Conley*, 4 M.J. 327 (C.M.A.1978); *United States v. Manuel*, 8 M.J. 822 (A.F.C.M.R.1979); *United States v. Turner*, 46 C.M.R. 351 (N.C.M.R.1971).

426 (CA8 1906); 84 ALR 1172; 98 C.J.S. Witnesses, § 348....

The military judge, because of his figurehead status, and the powerful and influential position that he occupies, must guard against abuse or unwitting exploitation of that authority, even though he may consider that he has a valid reason. *United States v. Brandt*, 196 F2d 653 (CA2 1952). Any indication by him as to the guilt or innocence of the accused, the credibility of a witness, or the lack of merit to a defense, can assume inappropriate weight to the lay juror. *United States v. Lee*, 107 F2d 522 (CA7 1939); *Texas Pacific-Missouri Pacific Terminal R. of New Orleans v. Welsh*, 179 F2d 880 (CA5 1950). The judge must, at all times, remain impartial, judicious, and responsive to the needs of the Court, counsel and the defendant. *United States v. Brandt, supra. United States v. Gross*, 103 F2d 11 (CA 7 1939). Above all, he must remain the judge and not assume the role of a partisan or an advocate. *United States v. Payne*, 12 USCMA 455, 31 CMR 41 (1965); *United States v. Lowe*, 11 USCMA 515, 29 CMR 331 (1960); *United States v. Bishop*, 11 USCMA 117, 28 CMR 341 (1960).

*Id.* at 451.

The opinion in *United States v. Taylor, supra,* also dispels the spurious notion that the trial judge may properly assume more of a prosecutorial role whenever it is apparent that the trial counsel is not an experienced courtroom advocate:

> [E]xtending assistance to an inexperienced prosecutor will not justify the military judge in laying aside his judicial cloak and assuming the role of a part-time prosecutor. The constitutional guarantee of a fair and impartial trial includes an impartial judge. *Gomila, et al. v. United States*, 146 F2d 372 (CA5 1944). Further, even though the judge may unwittingly, and in good faith, help the prosecutor assume his burden, this also must be avoided. One of our basic principles underlying conduct of trials by court-martial is that the Court's actions

and deliberations must not only be untainted but must also avoid the very appearance of impurity. *United States v. Walters*, 4 USCMA 617, 16 CMR 191 (1954); *United States v. Hill*, 6 USCMA 599, 20 CMR 315 (1956).

*Id.* at 452.

In *United States v. Clower*, 23 U.S.C.M.A. 15, 48 C.M.R. 307 (1974), the Court of Military Appeals was called upon to review a general court-martial case which in its trial posture resembles the present case. *Clower* was a close, contested case in which defense success in the trial forum was dependent upon the acceptance by the court members of the truthfulness of the accused's testimony. Finding that the manner in which military judge questioned the accused was akin to impeachment and that the judge had effectively communicated to the triers of fact his personal belief that the accused was less than credible, the Court unanimously reversed the conviction on the basis of plain error. Concerning the extraordinary sensitivity of jurors to remarks of the trial judge under such circumstances, Chief Judge Duncan initially quoted from a case decided by the Supreme Court of the United States: " 'The influence of the trial judge on the jury is necessarily and properly of great weight,' *Starr v. United States*, 153 US 614 [14 SCt 919, 38 LEd 841], and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." *Id.*, at 23 U.S.C.M.A. 18, 48 C.M.R. 310 (quoting *Bollenbach v. United States*, 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946)). He then expressed the views of the Court of Military Appeals on the same topic:

> Common among jurors is the propensity to attempt to tune in on and adopt a trial judge's appraisal of the facts. At trial a judge is a positive authority figure symbolizing the very best of the legal profession's relation to the maintenance of justice. Extreme caution must be observed to prevent a joinder of an exposure of a trial judge's view of the facts and a juror's natural curiosity about an affinity for that view from causing any abandon-

ment of each juror's personal fact-finding responsibility.

*Id.*

Similarly, in *United States v. Massa*, 49 C.M.R. 586 (A.C.M.R.1974), the trial judge of a general court-martial with members questioned a defense witness in a manner which in effect destroyed the witness' credibility. This Court unanimously found that the military judge had abandoned his impartial role and become an advocate for the government, the legal consequence of which was prejudicial error. *Id.*, at 589.

A similar case was decided by the Court of Military Appeals during this same time frame. In *United States v. Holmes*, 1 M.J. 128 (C.M.A.1975), the trial judge questioned a defense witness in a manner which was found to be more inquisitorial than impartial and with the apparent purpose of discrediting the witness rather than clarifying a point. Prior to questioning the witness, the military judge had uttered certain prefatory remarks in which he expressed disbelief of the earlier testimony of the witness. Shortly afterwards, when the trial defense counsel attempted on redirect examination to rehabilitate the witness, the judge interrupted the defense counsel and made inappropriate comments to him in the presence of the members. The unanimous holding was that the trial judge had shed his mantle of impartiality, to the prejudice of the accused. In setting aside the findings and sentence, the Court summed up its conclusions as follows:

> In our opinion, there is a fair risk that the judge's remarks indelibly impressed upon the court members the unsupported view that defense had instigated or been instrumental in knowingly obtaining false testimony to support appellant's claim of innocence. Moreover, they improperly affected the appellant's credibility. With such injudicious spoutings imprinted upon the minds of the court members shortly before they closed to deliberate on their findings, any semblance of a fair trial disappeared.

*Id.*, at 130.

The findings and sentence were also set aside in *United States v. Shackelford, su-*

pra, another contested case tried before a court-martial with members. Once again, the Court of Military Appeals found that the trial judge had abandoned his impartial role and that he had become a partisan advocate for the prosecution. The number of and, more importantly, the tenor of the trial judge's questions of the accused improperly signaled to the members the judge's concern about the credibility of the accused. In arriving at the appellate determination that the accused had been denied a fair hearing as a result of the trial judge's questioning, the Court relied upon the following language from a much older Fifth Circuit case:

> While that method of cross-examination if it had been conducted by the district attorney, might have been proper, a .. judge ought never assume the role of a prosecuting attorney and lend the weight of his great influence to the side of the government. It is the judge's duty to maintain an attitude of unswerving impartiality between the government and the accused, and he ought never in any questions he asks go beyond the point of seeing to it, in the interests of justice, that the case is fairly tried.... It is too much to expect of human nature that a judge can actively and vigorously aid in the prosecution and at the same time appear to the layman on the jury to be impartial.

*United States v. Shackelford, supra* at 20 (quoting *Hunter v. United States*, 62 F.2d 217, 220 (5th Cir.1932)).

The case presently under review is similar in many respects to *United States v. Wilson*, 2 M.J. 548 (A.C.M.R.1976). In common with the trial judge in this case, the military judge in *Wilson* affirmatively assisted the prosecution by shaping and changing the course of the questioning and by attempting to rehabilitate a prosecution witness. Moreover, other similarities are apparent in view of the following: the trial judge in *Wilson* improperly referred to facts outside the record of which he was

aware from a previously tried case; he was unusually critical of the trial defense counsel's redirect examination of a major defense witness and threatened to, if he did not in fact, limit the right of cross-examination; and he substantially interfered with the evidence given by a principal defense witness and thereby colored it and created more than a fair risk that the court members were infected by his attitude of disbelief. What was said by this Court in *United States v. Wilson, supra,* applies with equal force and effect here: "[T]he sympathies of the military judge were not merely subtly transmitted, but were in fact repeatedly broadcast and translated into affirmative action. Thus, the prosecution received not only the side benefits noted by Chief Judge Duncan [*in United States v. Clower, supra*], but also the sometimes effective services of a 'prosecutor.'" *Id.,* at 551. The Court found more than a fair risk that the trial proceedings were impermissibly infected by the numerous improper forays of the trial judge into the field of adversarial combat and unanimously reversed the conviction.

Applying these judicial precedents and principles to the facts of record in the instant case, we find that the appellant was denied a fair hearing in the trial forum as a result of the above-described rulings, comments, and actions by the military judge which, *in toto,* materially strengthened the prosecution case before the triers of fact and, at the same time, improperly limited and vitiated that of the defense.

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Senior Judge McKAY and Judge COKER concur.