UNITED STATES

v.

Byran C. KLAWUHN, 368 98 4701, Hull Maintenance Technician Third Class (E–3), U.S. Navy.

NMCM 89 3550.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 13 Nov. 1989.

Decided 31 Oct. 1991.

LT Wade W. Parrish, JAGC, USNR, Appellate Defense Counsel.

Maj Rose M. Favors, USMC, Appellate Government Counsel.

Before MITCHELL, FREYER and HOLDER, JJ.

FREYER, Judge:

The appellant was convicted, at a general court-martial with officer members, of conspiracy to commit housebreaking, housebreaking by breaking into a storeroom in USS IOWA (BB 61), and larceny of U.S. Government property therein. He was sentenced to reduction to pay grade E–1, forfeiture of all pay and allowances, confinement for three months, and a bad-conduct discharge. The convening authority approved the findings [sic] and the sentence.

At the trial, the defense made a timely motion for appropriate relief to obtain a new Article 34, 10 U.S.C. § 834 advice and a new referral decision by the convening authority based on such new advice. The military judge denied the motion, and that ruling has resulted in the only assignment of error that this Court need address.

At the Article 32 investigation, counsel for the accused (the appellant here) requested the presence of a lieutenant (junior grade) as a witness and made the following offer of his expected testimony:

> LTJG Myers['] testimony would concern the performance of the accused following the turret accident [in USS IOWA], he is the gunnery officer and led the first group to enter the lowest level of the turret, the accused heroically performed dewatering and desmoking damage control, there was danger from the deck above collapsing and a shock hazard from above.

After a rather sloppy exchange among counsel for the government, counsel for the accused, and the investigating officer concerning the unavailability of the witness and a possible stipulation of expected testimony, the matter was resolved by an agreement that the Article 32 investigating officer would consider as evidence the offer of expected testimony as aforesaid (which we have no difficulty discerning as a matter in mitigation).

At the conclusion of the Article 32 investigation, the investigating officer submitted a report in which he "x"d the box in block 20 of the DD Form 457 recommending trial by general court-martial but qualified that recommendation by comments in block 21 in the following terms:

> Based on the strength of the evidence submitted and my concept(s) of what type of charges warrant trial by general court[-]martial, a GCM has been recommended. However, *it is strongly recommended that the convening authority consider sending this case to SPCM* in light of the uncontroverted opinion evidence (presented by the defense) that two equally serious cases were disposed of at SPCM. Since the two related cases were not within the scope of this investi-

gation, I am incapable of reaching an informed opinion as to seriousness of the accused's conduct relative to that of Bryan and Kotis.

(Emphasis supplied.)

The staff judge advocate's Article 34 advice unequivocally stated: "Extenuating or mitigating circumstances: None." Moreover, it made no mention of any companion cases and addressed the investigating officer's recommendation simply thus: "On 14 September 1989, the Article 32 investigating officer submitted his report to Commanding Officer, USS Iowa (BB–61), recommending trial by general court-martial on all offenses."

The principal instrumentalities for ensuring that only those cases are referred for trial by general court-martial that belong there are the Article 32 investigation and the Article 34 pretrial advice. If the staff judge advocate, intentionally or negligently, misrepresents the contents of the investigative record in, or omits material information from, the Article 34 advice, the principal purpose of the investigation and advice can be defeated. Consequently, a well-developed body of law exists to provide judicial review of the Article 34 advice to ensure that the evidence developed at the Article 32 investigation and any other matters, including matters in mitigation, which may have some bearing on the type of court-martial to which the charges are referred, if presented at all, will be fairly and accurately presented to the convening authority by the staff judge advocate. A judicial remedy is provided if they are not. *See United States v. Hardin*, 7 M.J. 399, 404 (C.M.A.1979). As well stated in the Discussion following Rule for Courts–Martial (R.C.M.) 406:

> Whatever matters are included in the advice, whether or not they are required, should be accurate. Information which is incorrect or so incomplete as to be misleading may result in a determination that the advice is defective, necessitating

appropriate relief. *See* R.C.M. 905(b)(1); 906(b)(3).

In regard to such motions for appropriate relief, however, the Government benefits from a rule, designed to serve a purpose similar to that served by the post-trial rule of *United States v. Goode*, 1 M.J. 3 (C.M.A.1975); that is, to prevent otherwise correct trials from being vitiated by defects in ancillary proceedings. Rule for Courts–Martial 905(b)(1) and (e), thus, require that the defense counsel move against any defects in the Article 34 advice before pleas are entered, when they can be rectified with minimal inconvenience and delay, or else the defects are waived.

Until comparatively recently, the pretrial charging and referral functions of the staff judge advocate and the convening authority, now characterized as "prosecutorial,"[1] were defined as "judicial." *See United States v. Hardin*, 7 M.J. 399, 405–07 (C.M.A.1979) (Cook, J., concurring). In some respects, those functions manifestly resemble prosecutorial functions in civilian criminal practice, but the Uniform Code of Military Justice is not a civilian criminal code, *Parker v. Levy*, 417 U.S. 733, 749, 94 S.Ct. 2547, 2558, 41 L.Ed.2d 439 (1974). The judges who, in applying the Uniform Code of Military Justice, chose to define those functions as judicial were not ignorant of their resemblance to prosecutorial functions. Rather, they understood that defining them as judicial served an interest analogous to defining certain civil relationships as "fiduciary": It subjected them to closer scrutiny by the courts and imposed a standard of fair dealing higher than the mere absence of fraud.

The need for imposing a fiduciary relationship arises from either a special advantage of one party, a special vulnerability of the other, or some combination of the two. Unique features of the military justice system, including those which virtually require the same individuals to alternate between prosecutorial and judicial roles[2] in the

---

1. *United States v. Fernandez,* 24 M.J. 77 (C.M.A.1987).

2. *See* R.C.M. 503(a)(1) (detailing members); 504(d)(1) (designating the place of trial); 505(a)

(changing and excusing members); 702(b) (ordering depositions), (d)(1) and (3) (detailing and giving instructions to the deposition officer), and (g)(3) (determining how the deposition will

same case, were long believed to warrant applying judicial standards of behavior, and concomitant court supervision, to the functions of staff judge advocates and convening authorities in the processing of court-martial cases so as to hold them to a standard of officiality and fair dealing, *Petty v. Moriarty*, 20 U.S.C.M.A. 438, 43 C.M.R. 278 (1971), as distinguished from the standard of extreme partisanship and sharp practice deemed acceptable for prosecutors in the civilian world. *See e.g., Newton v. Rumery*, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987); *United States v. Goodwin*, 457 U.S. 368, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978); *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).

It is quite inconceivable that any Anglo-American system of justice would allow the prosecutors in any of the above-cited cases subsequently to assume a judicial role with respect to them. Characterization of the referral process as judicial, thus, contributed to upholding the integrity of the military justice system by prescribing a standard of pretrial behavior for staff judge advocates and convening authorities which was not too incompatible with their concurrent and post-trial judicial functions, and disqualification was readily imposed when the limitations of officiality and fair dealing were exceeded. Characterization of the referral process as judicial also afforded it the command influence protection of Article 37, 10 U.S.C. § 837 which explicitly extends only to "judicial acts."

Perhaps inadvertently, *United States v. Hardin* began a lamentable process of degrading the Article 34 advice by designating it a "prosecutorial Codal tool." That process was completed in 1984, when the once-analytical Article 34 advice was eviscerated to a point where, at the option of the staff judge advocate, it might be nothing more than a conclusory form letter generated almost entirely by a computer (*see* R.C.M. 406(b)). Notwithstanding the redesignation and evisceration of the Article 34 advice, it is still possible to make a bad job of it, and the continuing validity of a judicial remedy has been reaffirmed in the very Manual for Courts–Martial, United States, 1984, that implemented the evisceration of the Article 34 advice. *See* R.C.M. 905(b)(1) and Discussion, and 906(b)(3).

If an Article 34 advice is merely a prosecutorial Codal tool, one may well ask why an accused has standing to obtain judicial review of it at all. Rule for Courts–Martial 406(c) requires that the Article 34 advice be provided to the accused, and the lead opinion in *Hardin* recognizes a continuing right to judicial review to test the Article 34 advice for legal competence, accuracy, and freedom from bias (whatever that means when applied to a prosecutorial document). It seems unlikely that a civilian defendant could obtain relief from errors in a memorandum from an assistant district attorney to his boss recommending prosecution of the defendant, or that a copy of such a memorandum would be routinely or otherwise provided to the defendant. We are also unaware of any source of rights that a civilian defendant would have to legal competence, accuracy, and freedom from bias on the part of prosecutors in their communications among themselves. Whatever the theoretical basis, Rule for Courts–Martial 905(b)(1) and Discussion, and Rule for Courts–Martial 906(b)(3), appear to settle the matter of the availability of judicial review. Yet the existence of such a remedy strongly suggests that the characterization of the staff judge advocate's and the convening authority's functions in the referral process as prosecutorial, and the

be recorded); 703(d) (acting on requests for the employment of expert witnesses), (e)(2)(G)(i) (issuing a warrant of attachment), and (f)(4)(C) (acting on requests to quash or modify subpoenas); 706(b) (ordering mental examinations); 707 (granting continuances not chargeable to the Government in determining speedy trial, *see United States v. Carlisle*, 25 M.J. 426

(C.M.A.1988)); 809(d) (enforcing contempt citations); 903(c)(1) (detailing enlisted members or stating why the detail of enlisted members is impracticable); and 905(j) (resolving miscellaneous pretrial matters normally resolved by motions at trial) for examples of judicial functions of the convening authority at the pretrial and even in-trial stages.

characterization of the Article 34 advice as a prosecutorial Codal tool, are not without their limitations, if not flaws.

Be that as it may, unlike *United States v. Hardin,* this case involves not the mere identity of who prepared the advice, but the very content of the advice itself, which was materially inaccurate in stating that there were no matters in mitigation, when, in fact, there were matters in mitigation going to the essence of military duty and personal courage, and in omitting a material qualification to the investigating officer's recommendation. The defense motion for appropriate relief provided a convenient opportunity for the correction of these deficiencies, before trial on the merits and in-area, but the military judge refused to order the necessary corrective actions. The advice was clearly wrong; in denying the existence of the appellant's matters in mitigation, and in omitting the material qualification to the investigating officer's recommendation indicating that companion cases were tried by special courts-martial and strongly recommending consideration of a similar disposition of this case, it was also unfair; and the appellant made a timely motion for appropriate relief. We do not understand why, then, the military judge denied this appellant the enforcement, mandated by *United States v. Mickel,* 9 U.S.C.M.A. 324, 26 C.M.R. 104 (1958), of his pretrial rights, nor has this Court been furnished with any basis other than pure speculation upon which to conclude that a correct advice would have made no difference. Moreover, while there must undoubtedly be errors so insignificant as to be classifiable as *de minimis,* since referral to a particular type of court-martial, like approval of a sentence, is a matter within the unfettered discretion of the convening authority, there must also be limits on the degree to which a military judge, or this Court, may substitute his, her, or its judgment for that of the convening authority. *Cf. United States v. Craig,* 28 M.J. 321, 325 (C.M.A.1989) (court unwilling to speculate on effect of clemency petition potentially overlooked by convening authority). On the current state of the record, and because of the disparity in con-sequences between a special and a general court-martial, *United States v. Penister,* 25 M.J. 148, 153 (C.M.A.1987), the appellant is entitled to relief. *United States v. Greenwalt,* 6 U.S.C.M.A. 569, 20 C.M.R. 285 (1955).

The findings of guilty and the sentence are set aside. The record is returned to the Judge Advocate General for forwarding to an officer exercising general court-martial jurisdiction over the appellant, who may, (1) after receiving a proper Article 34 advice, order a rehearing by general court-martial; (2) without necessity for an Article 34 advice, order a rehearing by special or summary court-martial (subject to Article 20, 10 U.S.C. § 820), *see United States v. Cox,* 12 U.S.C.M.A. 168, 30 C.M.R. 168 (1961); *but see Boudreaux v. U.S. Navy–Marine Corps Court of Military Review,* 28 M.J. 181 (C.M.A.1989); or (3) dismiss the charges and order restoration of all rights, privileges, and property of which the appellant has been deprived by virtue of the findings and sentence set aside herein.

MITCHELL, Senior Judge (concurring):

I concur in the principal opinion. A staff judge advocate advice should be professional, completed staff work that accurately and even-handedly tells the convening authority the important aspects of the case. This is more consistent with a quasi-judicial capacity which ought to characterize the role of the convening authority. This requires some thoughtful draftsmanship, not blind application of boilerplate. When matters not required to be included by law are included in the document, they must nonetheless be stated accurately. If I use the phrase "write it all" so as to incorporate the notion of correctness, then as pen goes to paper staff judge advocates would do well to remember an old adage. "IF YOU WRITE AT ALL, WRITE IT ALL. FOR THE LAW ASSUMES YOU WRITE IT ALL, IF YOU WRITE AT ALL."

Judge HOLDER (absent).