**UNITED STATES**

v.

**Senior Airman Brian K. FOLEY,
FR038–50–8713, United States
Air Force.**

**ACM 29240.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 13 Nov. 1990.

Decided 31 March 1993.

Appellate Counsel for the Appellant: Colonel Jeffrey R. Owens and Captain Michael D. Burt.

Appellate Counsel for the United States: Lieutenant Colonel Brenda J. Hollis and Major Paul H. Blackwell, Jr.

Before LEONARD, JAMES, and JOHNSON, Appellate Military Judges.

## OPINION OF THE COURT

JAMES, Judge:

Senior Airman Foley was convicted of sodomy, an indecent act (as a lesser included offense of the rape that was charged), adultery, and an unlawful entry[1] (as a lesser included offense of the burglary[2] that was charged). All the offenses arose from a single, fairly brief episode in which Airman Foley went into the barracks room of a woman, an airman who was an acquaintance of his and with whom he and other friends had earlier spent part of the evening. He assigns several errors on appeal, which we address below. They relate mainly to the recommendations of the commanders who forwarded the charges, to the incorrect report of those recommendations by the staff judge advocate in his advice to the convening authority, to the investigation of the charges under Article 32, and to the military judge's refusal to recuse himself. We find no merit to any of the assignments, and we affirm both the convictions and the sentence.

## I. Forwarding the Charges

We begin by addressing Airman Foley's complaint that half of the charges were improperly forwarded. Four specifications under four charges went to trial in this case, but they were the survivors of five specifications preferred on four different occasions by three different accusers and forwarded with various recommendations, as shown below:

| Charge: | Offense: | Pref'd 1990: | Accuser: | Recmdatn of Unit and SPCM CA | Result |
|---|---|---|---|---|---|
| Orig'l | Sodomy | 17 Jul | LtCol N | Refer to GCM | Referred: Guilty except force |
| Addit'l | Rape | 30 Jul | Victim | No trial | Referred: Guilty of an indecent act |
| 2d Addit'l | Unlawful entry | 15 Aug | LtCol N | Refer to GCM | Referred: Withdrawn |
| 3d Addit'l I | Burglary | 7 Sep | LtCol C | No trial | Referred: Guilty of an unlawful entry |
| 3d Addit'l II | Adultery | 7 Sep | LtCol C | No trial | Referred: Guilty |

The original charge of sodomy is not affected by this assignment of error. Neither, of course, is the second additional charge which was withdrawn, but its brief existence helps dispose of part of this assignment.

Airman Foley's assignment concerns the second and fourth preferrals which pro-

---

1. Violations of Articles 125, 134, and 129, UCMJ, 10 U.S.C. §§ 925, 934, and 929 (1988), respectively.

2. Article 129, UCMJ, 10 U.S.C. § 929 (1988).

duced the additional charges alleging rape, burglary, and adultery. His complaint is that the unit commander and special court-martial convening authority recommended that those charges not be referred, but nonetheless forwarded them so that they arrived at the general court-martial convening authority's office, whereupon they were referred to a general court-martial for trial together. Furthermore, at least the unit commander was ignorant of his authority to dismiss the charges himself and to refrain from forwarding them.

Forwarding of military charges alludes to the movement of the charges through the hands of successive commanders, almost always upward and in the chain of command. By tradition, charges are first delivered to the immediate commander. *See* R.C.M. 301(b). That commander is responsible for a preliminary inquiry. R.C.M. 303. This process helps assure that offenses are addressed at the lowest echelon, *see* R.C.M. 306(b), usually by the commander having the best knowledge of the accused: "Ordinarily the immediate commander ... initially determines how to dispose of that offense." R.C.M. 306(a). That commander may (among other options) do nothing, dismiss the charges, punish the offender under Article 15, dispose of them by referring them for trial if he has that authority, or forward them up his chain of command if he doesn't. R.C.M. 306(c), 401–404, 407. Airman Foley speculates that the affected charges would not have come to trial if the unit commander and special court-martial convening authority had not forwarded them. Here, as at trial, he clings to the most feeble authority for his position, a sentence taken out of context from the opinion of a sister court of military review disposing of a different issue.[3]

■ We first address the burglary, for the issue in that instance is easily resolved. The burglary replaced an earlier specification alleging the lesser offense, unlawful entry, which was withdrawn. When the second additional charge was forwarded, both forwarding commanders recommended that the unlawful entry be referred to a general court-martial for trial. Though the burglary went to trial and the unlawful entry did not, the resulting conviction was of unlawful entry as a lesser included offense of the burglary. In short, the trial became the remedy for whatever error might be involved when recommendations are first ignored but then vindicated, and no relief would be warranted even if there were error because no prejudice resulted. Article 59(a), UCMJ, 10 U.S.C. § 859(a) (1988).

That leaves a complaint as to the rape, which we address now, and the adultery, which we address later. The special court-martial convening authority stated his reasons for his recommendation in writing, and the document is preserved in the record. The unit commander testified on the motion and stated his reasons. Both shared the same sentiment: They did not believe that a rape had occurred. It is clear, however, that both commanders were diligently trying to do what the court-martial later did conclusively: They were doing their best to draw conclusions from evidence that was in conflict. Airman Foley's real argument is that their pretrial assessment should have deflected his case from trial so that the conflicts in the evidence would never get to a jury.

■ What Airman Foley's argument overlooks is that the authority of the commanders at the lower echelon is not exclusive but instead overlaps the authority of the convening authorities at higher echelons. Thus, their sentiment did not bar putting the charges to the test at trial, and their disposition could not have barred the referral that ultimately came to pass, though, of course, it might have occasioned some further procedural steps.

■ Airman Foley would call it error for a commander to forward charges when he might otherwise dismiss them, but that argument overlooks forwarding as a legiti-

---

**3.** *United States v. Cunningham,* 21 M.J. 585, 588 (A.C.M.R.1985), *pet. denied,* 22 M.J. 275 (C.M.A. 1986) ("[I]t is difficult to imagine a commander forwarding charges if he believed an offense was *not* committed.").

mate way of passing the responsibility to another. Thus, a commander who has any doubt about what he ought to do may forward charges to a higher echelon so that the disposition will be made by one having the benefit of the greater experience and breadth of knowledge that can be brought to bear upon them at that higher echelon. Furthermore, it is not inconsistent for a commander to recognize that certain charges are serious if true and that others might reasonably disagree with his assessment. To forward in such a circumstance does no more than to put the charges to the test at trial, and the trial is itself the remedy for controversies about the process leading to referral. To forward charges on which there is some substantial evidence, despite one's own belief that they are not true, is neither error nor abdication. *Cf. United States v. Miller,* 31 M.J. 798, 802 (A.F.C.M.R.1990), *aff'd,* 33 M.J. 235 (C.M.A.1991) (q.v.) (dubious accuser need not be convinced of guilt and may properly leave the ultimate issue to the court-martial).

■ Our discussion of the rape and burglary charges suggests our view on the adultery charge. There is nothing wrong, and there is much good, about assuring that all known and related charges are disposed of at a single trial. *See* R.C.M. 307(c)(4); *see also* Fed.R.Crim.P. 8(a). As the pretrial process continued, it became apparent that no charge addressed Airman Foley's marital status. The adultery charge, one of the last pair added, covered that minor gap. We can well understand that the forwarding commanders might have begun to lose patience with the process, but one simply cannot say that the charge was not warranted by the evidence that had accumulated at that point. . Thus, forwarding it for the convening authority's consideration—even with recommendations against referral—was clearly within the discretion of the forwarding commanders, especially given that other, serious charges had already been forwarded to the convening authority and were awaiting his action. The wisdom of forwarding the adultery is vindicated by the finding: Airman Foley was convicted on that charge.

The foregoing suggests the reply to Airman Foley's additional theory that the unit commander was ignorant of his authority to dismiss the charges. It doesn't matter, though it is indeed regrettable that he was neither instructed nor advised about the range of his options. Ironically, he did what a poorly informed commander ought to do: he got the matter to someone in a better position to decide. If we assume that—properly educated—he would have disposed of the charges himself by dismissal or minor punishment, we must inevitably conclude that on a major charge like rape, the unit commander's disposition would not have barred trial. R.C.M. 907(b)(2)(D)(iv). Thus, no relief is warranted on this aspect, either.

## II. Incorrect Advice

There is yet another facet of this complaint that is even more troublesome: The convening authority who referred the charges was twice given incorrect information by his staff judge advocate about the recommendations of the forwarding commanders. Addressing this issue requires a brief review of that procedure and its history.

Before charges may be referred to a general court-martial, Article 34, UCMJ, 10 U.S.C. § 834 (1988), requires that the convening authority receive advice from his staff judge advocate. The advice must include the staff judge advocate's conclusions on three legal issues and his recommendation. *Id.;* R.C.M. 406, 407(a)(6), 601(d). Of course, nothing but prudence limits the other advice which the staff judge advocate may give on this occasion, and the use of standard forms or formats has led many a staff judge advocate to address matters other than those required by the statute and rules. *See generally United States v. Foti,* 12 U.S.C.M.A. 303, 30 C.M.R. 303 (1961) (requiring individualized treatment of cases, criticizing the use of forms).

In this case, the general court-martial convening authority's staff judge advocate twice gave inaccurate reports to the convening authority about the recommenda-

tions of the unit commander, writing (as would usually be the case) that he had recommended that the charges be referred to a general court-martial for trial. As we showed above, he had not. The advice gives no indication that the unit commander's transmittal letters accompanied it to the convening authority's office,[4] and so we must assume that there was no accurate report before the convening authority to offset the staff judge advocate's error. Such recommendations are very important, for they come from commanders on the scene, closer geographically and organizationally to both the accused and the events. Now we must unravel the legal effect of the staff judge advocate's error, and we must do so with special care appropriate to the importance of such recommendations and attentive to the recent legislative and Executive history of the advice.

Not long ago, the advice required by Article 34 was a major undertaking. With somewhat less statutory guidance than presently, such documents grew to impressive bulk, recounting the evidence at length, regurgitating the elements of proof of the charged offenses, and analyzing the likely legal issues in scholarly detail. One decision describes "the 28–page pretrial advice which envelops six charges with 24 specifications." *United States v. Hardin*, 7 M.J. 399, 404 (C.M.A.1979). We first note that such documents were then written on legal-length paper, and (if our memory has not faded enough) in single-spaced text. Next we note, for the benefit of the succeeding generation that has been spared writing and reading such literary behemoths, that 28 pages was hardly unusual, even for many fewer specifications.

Part of the explanation for the bulk that the old advice acquired was the constant threat that any omission might later be found on appellate review to constitute an error. Though part of the threat was probably imagined, it also had some significant empirical basis.[5] Conservative anxiety about leaving something out caused the kitchen sink to be added to the boiler plating that was intended to make the old advice bullet-proof, but the bigger it got, the more everyone worried about its usefulness. Though the appellate tests for error and remedy gradually settled, *Hardin*, 7 M.J. at 402–5, that was not enough to stop the beast from growing.

Finally, Article 34 was amended and the implementing procedural rules were changed. Military Justice Act of 1983, Pub.L. No. 98–209, § 4, 97 Stat. 1393 (1983); *see generally, United States v. Murray*, 25 M.J. 445 (C.M.A.1988); *United States v. Klawuhn*, 33 M.J. 941 (N.M.C.M.R.1991). While the former law "require[d] the convening authority ... to assess the legality of prospective general courts-martial," the amended statute "require[d] these judgments to be made by the staff judge advocate." H.R.Rep. 98–549, 98th Cong., 1st Sess. *reprinted in* U.S.Code Cong. & Admin.News 2177, 2179. The statute's list of required contents was made more explicit, requiring only that the *conclusions* on legal issues be reported, not the analyses that led to them. Similarly, the implementing rules were changed to delete the requirement to summarize the circumstances and mitigating factors and to delete the requirement to report *"any prior recommendations for disposition of the case."* Manual for Courts–Martial paragraph 35c (1969 rev. ed.) (emphasis added); *cf.* R.C.M. 406(b).

---

**4.** There is no requirement that it do so, but the absence of a list of the attachments or accompanying documents deprived us of the possibility of finding that an accurate report was given in the commander's own letters, with his initials beside it. *Cf. United States v. Brown*, 13 U.S.C.M.A. 11, 32 C.M.R. 11, 12–13 (1962) (advice need not include everything if the missing information accompanies it).

**5.** *See, e.g., United States v. Lawson*, 16 U.S.C.M.A. 260, 36 C.M.R. 416 (1966); *United*

*States v. Brown*, 13 U.S.C.M.A. 11, 32 C.M.R. 11, 12–13 (1962); *United States v. Foti*, 12 U.S.C.M.A. 303, 30 C.M.R. 303; *United States v. Greenwalt*, 6 U.S.C.M.A. 569, 20 C.M.R. 285 (1955); *United States v. Knowles*, 24 C.M.R. 875 (A.F.B.R.1957); *United States v. Geib*, 24 C.M.R. 840 (A.F.B.R.1957); *United States v. Brown*, 24 C.M.R. 585 (A.F.B.R.1957); *United States v. Matthews*, 23 C.M.R. 790 (A.F.B.R.1956); *see also United States v. Fleenor*, 42 C.M.R. 900, 901 (A.C.M.R.1970) (citing examples).

The cure must have worked, for there are relatively few decisions involving defective Article 34 advice after 1983. However, practitioners have not greeted the new, abbreviated advice uniformly. *See, e.g., United States v. Smith*, 33 M.J. 968 (A.F.C.M.R.1991). We recognize that some convening authorities want more than the statutory minimum, and it is their prerogative to demand more. The discussion which accompanies R.C.M. 406(b) remarks,

> [T]he pretrial advice should include when appropriate: ... any previous recommendations, by commanders or others who have forwarded the charges, for disposition of the case....
>
> Whatever matters are included in the advice, whether or not they are required, should be accurate. Information which is incorrect or so incomplete as to be misleading may result in a determination that the advice is defective, necessitating appropriate relief.

The question in this case is what to do when the advice inaccurately reports a matter not required either by the statute or the Rules for Courts–Martial.

Of the three post–'83 decisions about the advice that we cited above, only *Klawuhn*, 33 M.J. 941, addresses this kind of inaccuracy, and we disagree with it in this respect: the "well developed body of law ... to provide judicial review of the Article 34 advice" and the passage in the quoted part of the discussion accompanying R.C.M. 406(b) may not be determinative of the outcome in misstatement and omission cases after 1983 and 1984. We turn to the discussion first, but both of the *Klawuhn* legs are quickly addressed. Perhaps surprisingly, we will then wind up very close to where *Klawuhn* would leave us.

As we noted above, R.C.M. 406 did not continue the prior requirement that the recommendations of forwarding commanders be reported. The accompanying discussion suggests doing so, but there is little value in relying upon the discussion, for it is not authoritative. The Manual's procedural and evidentiary rules and prescriptions of maximum punishments have the force of law because they are Executive prescriptions under authority explicitly delegated by Congress, Articles 36(a) and 56, UCMJ, 10 U.S.C. § 836(a) and 856 (1988). However, the discussions that appear throughout the Manual are neither legislative nor Executive and do not purport to have the force of law. MCM, Preamble, paragraph 4 (1984). Indeed, even the military departments do not acknowledge them. *Id.* at the accompanying discussion. Instead, the discussions are simply passages in a large but fragmented treatise written by the draftsmen of the present Manual. MCM, analysis of changes at p. A21–3. Even those drafters exclaim, "The Discussion ... does not have the force of law...." *Id.* It simply reports the state of the law at the time it was last synopsized by those drafters, to the extent they understood it then. When the discussion accompanying R.C.M. 406 was written, there were no post–'83 advice decisions to summarize, and the extent to which the pre–'83 decisions would govern post–'83 advice under Article 34 had not yet been decided. It still hasn't, except by our brothers on the Navy–Marine Corps Court of Military Review, with whom, on this point, we respectfully disagree.

*Klawuhn* gave no explanation for its theory that a "new advice" would be reviewed according to the substantial body of law that developed around and contributed to the demise of the "old advice." We certainly do not agree with that view. Regardless whether the threat of that body of law was as awful as it was perceived to be, it was that threat that the amendments to Article 34 and the implementing rules were intended to abate. It hardly follows that the old decisions should be so quickly applied to the new advice, and we will proceed differently from *Klawuhn*, though perhaps consistently with its unwritten intent. We will consider the *present* statute only in the light of R.C.M. 406 and *post–'83* decisions about it. We will ignore the treatise-writer's opinions, for they are now obsolete and were never much better than our own.

The statute and rule are, as we have emphasized, explicit about what must be in the advice. They do not include the recommendations of forwarding commanders,

though they do not exclude them. Neither the rule nor the statute would have been offended by omitting them.

█ The mistake in reporting them can be disposed of by applying *Murray*, 25 M.J. 445, a post-'83 decision of the Court of Military Appeals not cited in *Klawuhn*. It appears that the *Murray* convening authority referred the charges to a general court-martial without any advice, a clear violation of Article 34. Yet *Murray* holds that such an error is not jurisdictional and should be reviewed for actual prejudice to determine whether any error was harmless, and it offers several factors to consider during that analysis: Whether the charges were serious enough to warrant trial by general court-martial, whether they were supported by the evidence before referral, how the appellant pleaded, whether the appellant objected to the advice at trial, and whether the error was disclosed to the convening authority in the post-trial papers. *Id.* at 449. The dissenter in *Murray* disagreed on the allocation of the burden, but he added some other factors consistent with those mentioned by the majority: The recommendations of the forwarding commanders, the recommendations of the Article 32 investigating officer, the sentence actually adjudged, giving allowances for the effect of the forum on sentences. *Id.* at 455. Though the *Murray* approach has some discernible pre-'83 heritage, it is, in our view at least, a reconsideration of the problem of reviewing Article 34 advice, not a summarization of the too-many appellate decisions that grew up around the old advice. Thus, having no precedent on whether it is error after 1983 to mistakenly report the recommendations of forwarding commanders, we will assume that it is and use the *Murray* factors to guide our analysis of prejudice.

█ There is no doubt that Airman Foley preserved his present complaint by objecting at trial. The post-trial papers did not bring the inaccuracy to the convening authority's attention so that he might take the unit commander's view of the charges into account when acting on the sentence, even though there are numerous pre-'83 decisions in which courts and boards of review used sentence relief to cure such errors.[6]

However, as we pointed out above, the burglary specification led upon trial to a conviction of no more than unlawful entry, exactly the same offense that the unit commander had recommended. As to that conviction, the mistake could have had no impact. Though the adultery would not alone have seemed so very important to us, it was travelling with the rape and should have been disposed of with it as a matter of economy. R.C.M. 601(e)(2) and accompanying discussion. Rape is a very serious matter, if it is to be tried at all, and there was probable cause to refer that charge. The Article 32 investigating officer recommended referral to a general court-martial, and the outcome at trial might easily have been different.

Furthermore, while the unit commander's views were incorrectly reported, his actual views were discussed, for the advice did discuss the written position of the special court-martial convening authority, who generally agreed with the unit commander. Indeed, the advice remarked, "Rarely does a case generate so much disagreement over

---

6. *See, e.g., United States v. Ginn,* 46 C.M.R. 811 (A.C.M.R.1972) (mistaken report of one commander's recommendation was error that might have affected CA's choice of forum, but error could be remedied by sentence relief) (cites three other cases); *United States v. Johnston,* 41 C.M.R. 461, 464 (A.C.M.R.1969), *pet. denied,* 19 U.S.C.M.A. 600, 41 C.M.R. 403 (1969) (advice mistakenly reported that unit commander changed his recommendation as to forum; sentence reassessed); *United States v. Wagner,* 30 C.M.R. 451 (A.B.R.1960) (like *Feron,* no statutory violation, but sentence relief granted where SJA advice omitted recommendations of inter-

mediate commanders that matter be referred to a special court-martial for trial); *United States v. Feron,* 29 C.M.R. 627 (A.B.R.1960) (advice omitted to mention prior Art. 15 punishment for same offense and recommendations of three intermediate commanders that case be referred to a special court-martial; reversible error only where "complete failure to comply with Article 34(a); but found error and corrected by sentence relief). We do not intend to criticize the staff judge advocate too severely, for we are dubious whether sentence relief adequately addresses the mistake, assuming relief is warranted.

which charges should be preferred and referred for trial."

Some of the sting from the deficient advice was removed by the fairly modest sentence that was adjudged, a bad-conduct discharge, reduction to E–1, and confinement for 8 months. Furthermore, the military judge found the indecent acts, sodomy, and adultery to be multiplicious for sentencing and instructed the members accordingly. In that situation, any discrete effect of the remnants of the rape and adultery was lost in the evidence of the transaction as a whole, which would likely have been admissible in the first instance, even if the rape and adultery had never been pleaded. Under these circumstances, we conclude that any legal error in the advice was harmless, and no relief is warranted.[7]

### III.   Investigation Under Article 32

■ Just as this case was notable for the diversity of views on disposition, it may also be notable for the issues created from its investigation under Article 32.

Captain R was detailed to investigate the original charge of sodomy. Before he could finish, the first additional charge (rape) was added, and Captain R was detailed to investigate it, too. As his investigation continued, Captain R apparently recognized that the facts suggested adultery and burglary or some other form of unlawful entry. He gave the parties notice of his intention to investigate those crimes, too, even though no such charges had yet been preferred.[8] He submitted a report covering the original and first additional charges (sodomy and rape) and the adultery and entry offenses, and he recommended in his report that the adultery and entry be preferred. Of those, only the unlawful entry was added. The report was then forwarded with the original charge (sodomy), the first additional charge (rape), and the second additional charge (unlawful entry).

Then the report and charges were reviewed in the office of the staff judge advocate serving the convening authority, and a person at that echelon preferred charges of burglary and adultery. Believing them all to have been investigated in compliance with Article 32, the convening authority referred all but the unlawful entry, which had become redundant.

When this medley of charges reached the court-martial, the defense entered various objections, some of which we address momentarily. The principal objection was that there had been no investigation under Article 32 of the burglary and adultery. The prosecution relied on R.C.M. 405(b), which simply repeats Article 32(c), UCMJ, 10 U.S.C. § 832(c) (1988) (prior investigation), and the military judge correctly noted that they give the defense an unqualified right to be heard on charges that result in the "prior investigation" setting. Accordingly, the military judge ordered that the Article 32 investigation be reopened for that purpose. *See United States v. Louder,* 7 M.J. 548 (A.F.C.M.R.1979), *pet. denied,* 7 M.J. 328 (C.M.A.1979); *United States v. Everman,* 40 C.M.R. 755

---

**7.** This is not to say that we view such a mistake less seriously. As we noted above, the forwarding commanders have special knowledge, and it could have been important to the convening authority to know that they had views different from those reported to him. Like our predecessors in too many prior cases to cite, we assume that the error in this case was inadvertent and not malicious. No matter what the documents might be, the administration of military justice deserves special attentiveness, and they should be protected from word-processors that reproduce blindly that same boiler plate that was used yesterday. While we are dubious of the remaining authority in cases like *Foti* (discouraging use of forms), we share the sentiment in those cases and that in *Klawuhn;* this business is too important to make such mistakes. Even more important to remember is that it was mistakes like the one in this case that contributed to the body of law that grew up around and then suffocated the old advice. Having recently been freed from the boilerplate that resulted, we hope that all will help avoid giving appellate courts any new opportunities to rebuild it.

**8.** Cf. *United States v. Bender,* 32 M.J. 1002, 1003–4 (A.C.M.R.1991) ("Since an Article 32 investigation investigates *not offenses but charges,* specifically those charges which, after preferral, are referred to it for investigation, the correct procedure when evidence of additional offenses arises during an investigation is to recommend to the appointing authority that additional charges be preferred and referred for investigation *while the investigation is still in progress.*").

(A.C.M.R.1969), *pet. denied,* 18 U.S.C.M.A. 644, 40 C.M.R. 327 (1969).

The investigation was reopened, and the same officer served as investigating officer. Various issues arose during and before the hearing, and the defense raised them without success at the next session of the trial. In brief, the defense complained then and again on appeal that the investigating officer was biased. The defense points to his "volunteer" excursion into investigation of the entry offenses and adultery at the first session and to its theory that the investigating officer was impeded at the second session by the opinions he had formed and expressed at and after the first. Finally, the defense singles out sentences from narratives in the investigating officer's report from which the defense concludes that he was biased. We are not persuaded.

The military judge explored this matter patiently and thoroughly, even taking testimony from the investigating officer. The military judge entered essential findings with which we agree and which we adopt as our own. He concluded that the objection was without merit, as do we.

Though the investigating officer has been characterized as a quasi-judicial officer, *e.g., United States v. Reynolds,* 24 M.J. 261 (C.M.A.1987), the events in this case hardly approximate the kinds of activities and interests that have been encountered in other cases.[9] Instead, the investigating officer seems to have gone to some lengths to reassure all that he would reconsider his prior conclusions in the light of

new evidence, and the remarks in his reports to which Airman Foley brings our attention are innocuous in the context of a perhaps too complete discussion of the case. There was no error.

Furthermore, though one is entitled to judicial enforcement of pretrial rights without regard to whether there will be any advantage to one's case, *United States v. Mickel,* 9 U.S.C.M.A. 324, 26 C.M.R. 104, 107 (1958), no relief would be warranted on appeal without a specific showing of prejudice, Articles 32(d), 59(a), UCMJ, 10 U.S.C. §§ 832(d), 859(a) (1988); *Reynolds,* 24 M.J. 261; *United States v. Davis,* 20 M.J. 61 (C.M.A.1985); *Lopez,* 42 C.M.R. at 269; *Cunningham,* 30 C.M.R. at 405; *Mickel,* 26 C.M.R. at 107–8. We have been shown no prejudice.

## IV. Ex Parte Communication

Just after the session in which the military judge ordered that the Article 32 investigation be re-opened, the investigating officer went to the military judge and asked whether the military judge had ruled that the investigating officer was disqualified to act further. The military judge informed him that he had not so ruled. Nonetheless, the military judge received another such inquiry and gave a similar reply. Airman Foley views these exchanges as ex parte communications and asks that we set the convictions aside because of them.[10] This assignment needs especially careful analysis because it is important and delicate, and because the parties have mistakenly addressed it in incorrect terms.

---

9. *See Reynolds,* 24 M.J. 261 (IO acquainted with members of SJA's office but not disqualified); *United States v. Collins,* 6 M.J. 256 (C.M.A.1979) (IO not disqualified by actions he took when witness was threatened); *United States v. Lopez,* 20 U.S.C.M.A. 76, 42 C.M.R. 268 (1970) (IO disqualified where he had investigated the case before having become IO); *United States v. Cunningham,* 12 U.S.C.M.A. 402, 30 C.M.R. 402 (1961) (IO had been accuser, was disqualified); *United States v. Parker,* 6 U.S.C.M.A. 75, 19 C.M.R. 201 (1955) (IO had participated in prior, quasi-police investigation, was disqualified); *United States v. Castleman,* 11 M.J. 562 (A.F.C.M.R.1981) (IO a friend of accuser, principal witness, was disqualified); *United States v. Natalello,* 10 M.J. 594 (A.F.C.M.R.1980) (IO had

investigated related case, formed views, was disqualified); *United States v. Schreiber,* 16 C.M.R. 637, 659 (A.F.B.R.1954), *aff'd,* 5 U.S.C.M.A. 602, 18 C.M.R. 226 (1955) (IO not disqualified by service as IO in related case).

10. This assignment is complicated by the fact that others mistakenly attributed to the military judge an opinion that Airman Foley's motion for a new Article 32 investigation was without merit to the extent that it involved any complaint about the investigating officer's impartiality. During his exploration of the matter, the military judge established that he had been misunderstood. We do not address this aspect further.

### A.  The Professional Standards

Ex parte communications are covered by the ABA Model Code of Judicial Conduct, Canon 3 (impartiality), rule 3.B.(7) (1990):

A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties concerning a pending or impending proceeding except that:

(a) Where circumstances require, ex parte communications for scheduling, administrative purposes or emergencies that do not deal with substantive matters or issues on the merits are authorized; provided:

(i) the judge reasonably believes that no party will gain a tactical advantage as a result of the ex parte communication, and

(ii) the judge makes provision promptly to notify all other parties of the substance of the ex parte communication and allows an opportunity to respond.

*Accord,* AF/JA Operating Instruction No. 04, "Uniform Code of Judicial Conduct for Military Trial and Appellate Judges and Uniform Regulations and Procedures Relating to Judicial Discipline," Canon 3.B.(7) (February 15, 1991).  Elsewhere the same authority provides the remedy:

A judge shall disqualify himself ... in a proceeding in which the judge's partiality might reasonably be questioned....

ABA Model Code of Judicial Conduct, Canon 3.E.; *accord,* AF/JA Operating Instruction No. 04, Canon 3.E.

### B.  Disqualification Under R.C.M. 902

R.C.M. 902(a) (recusal) provides the same remedy for a party at trial and under the same circumstances, and Airman Foley invoked his right under R.C.M. 902(d)(2) to examine the military judge and concluded by *challenging* the military judge, a subtle mistake that we emphasize now because of its misleading effects.

■ No rule in Manual for Courts–Martial permits a party to challenge a military judge.[11]  Instead, R.C.M. 902(d)(1) provides for a *motion* that the military judge *determine whether the military judge is disqualified.*  This is not a distinction without a difference.  Misuse of "challenge" might suggest that we should apply the law relating to challenges of members under R.C.M. 912, but R.C.M. 902 correctly isolates the issue as relating to disqualification, a matter which is well summarized in *United States v. Berman,* 28 M.J. 615 (A.F.C.M.R. 1989) (en banc).

The military judge recognized the possibility of disqualification and pursued it sua sponte, first recounting the events as he recalled them and then bringing to the attention of defense counsel the right to examine the military judge.

■ *Berman* tells us to apply the disqualification test *objectively,* as R.C.M. 902(a) implies ("reasonably"), and we will do so using the framework of the ABA Code applicable to ex parte communications.  The military judge did "permit an ex parte communication," and it did "concern a pending proceeding."  However, the military judge could fairly conclude (and apparently did) that the communication was necessary for an administrative purpose, namely to assure that his ruling was correctly understood and not misconstrued to exclude the original Article 32 investigating officer from further participation.  There are obvious economies in using the same hearing officer for any continuation of any prior hearing.  The question was procedural, not substantive, and the intent of the order had not yet become an issue in the trial.  Finally, the military judge informed the parties of the brief conversation, and the defense later acted upon it, as we have described.  Thus, the military judge could fairly conclude that Canon 3.B.(7) was satisfied.

Having found no infraction of the canons, the military judge could then assess the whole transaction to determine whether

**11.**  Thus, the departmental appendix to the Manual, appendix 8, misstates the procedure at p. A8–3.  *See* MCM, Preamble, paragraph 4 and analysis of changes at p. A21–2 ("Supplementary Materials") (1984).

his conversation with Captain R would have resulted in any reasonable question as to his partiality, the R.C.M. 902(a) test. The record suggests that he did so, concluding that a person correctly informed of the events would have no reasonable grounds on which to suspect any bias. We agree.

## C. Disqualification for Partiality

■ The precedents include a variety of cases in which impartiality has been at issue, resulting from a military judge's control of proceedings,[12] becoming a witness,[13] giving partisan advice to counsel or helping a party,[14] consulting other judges,[15] requiring production of additional evidence,[16] questioning witnesses,[17] and commenting on evidence.[18] These cases have led to guidelines for resolving the issue, one of

which is different from those under R.C.M. 902, and the other of which defines the scope of review. The analysis of partisanship on appeal is *subjective:* one examines the military judge's actual disposition,[19] in the totality of circumstances. *United States v. Reynolds,* 19 M.J. 529 (A.C.M.R. 1984), *aff'd,* 24 M.J. 261 (C.M.A.1987); *United States v. Kimble,* 23 U.S.C.M.A. 251, 49 C.M.R. 384, 387 (1974) ("whole record of trial").

■ This entire issue resulted from a question that would have been perfectly innocent, had it been correctly posed as a motion for clarification by the trial counsel, in court and on the record. No *error* occurred when the same question was, regrettably,[20] posed by the investigating offi-

**12.** *United States v. Reynolds,* 19 M.J. 529, 533 (A.C.M.R.1984), *aff'd,* 24 M.J. 261 (C.M.A.1987) (q.v.) (military judge's role in a trial with deteriorating decorum); *United States v. Thomas,* 18 M.J. 545 (A.C.M.R.1984) (manner in dealing with the counsel was unfair to defense).

**13.** *United States v. Conley,* 4 M.J. 327 (C.M.A. 1978).

**14.** *United States v. Payne et al.,* 12 U.S.C.M.A. 455, 31 C.M.R. 41 (1961) (occasional suggestions, recommendations to counsel who appear unsure); *United States v. Kennedy,* 8 U.S.C.M.A. 251, 24 C.M.R. 61 (1957) (law officer consulted with SJA, offered continuance to prosecution to allow it to work on witness); *United States v. Felton,* 31 M.J. 526, 531 (A.C.M.R.1990) (no error in warning counsel that another challenge will reduce court below quorum, but error to instruct trial counsel on order in which to make challenges) (examined for prejudice, none found where trial counsel did not follow the advice); *United States v. Zaccheus,* 31 M.J. 766 (A.C.M.R.1990) (helped "obviously inexperienced counsel" lay foundation); *United States v. Masseria,* 13 M.J. 868 (N.M.C.M.R.1982), *pet. denied,* 14 M.J. 171 (C.M.A.1982) (noting deficiency in prosecution's evidence).

**15.** *United States v. Baker,* 34 M.J. 559 (A.F.C.M.R.1991).

**16.** *United States v. Blackburn,* 2 M.J. 929 (A.C.M.R.1976), *pet. denied,* 2 M.J. 166 (C.M.A. 1976) (after parties both rested, military judge saw defect in evidence, summoned witness; no error).

**17.** *United States v. Hobbs,* 8 M.J. 71, 73 (C.M.A. 1979) (no hint of bias or pre-determination); *United States v. Shackelford,* 2 M.J. 17 (C.M.A. 1976) (sheer number of questions suggested

judge's concern with credibility of accused); *United States v. Clower,* 23 U.S.C.M.A. 15, 48 C.M.R. 307 (1974) (military judge questioned deserter to impeach); *United States v. Kimble,* 23 U.S.C.M.A. 251, 49 C.M.R. 384, 387 (1974) (skeptical but logical questions not disqualifying); *United States v. Lindsay,* 12 U.S.C.A. 235, 30 C.M.R. 235 (1961) (no bias); *United States v. Bishop,* 11 U.S.C.M.A. 117, 28 C.M.R. 341 (1960) (law officer did not show bias); *United States v. Wood,* 29 M.J. 1075 (A.C.M.R.1990), *pet. denied,* 31 M.J. 492 (C.M.A.1990) (military judge probed inconsistencies in accused's testimony but showed no bias); *United States v. Cephas,* 25 M.J. 832 (A.C.M.R.1988) (one question by judge requiring explanation of witness's prior answer did not show bias); *United States v. Thomas,* 18 M.J. 545 (A.C.M.R.1984) (375 questions to defense witnesses). See Mil.R.Evid. 614(b).

**18.** *Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933) (role of trial judge in commenting on evidence); *United States v. Holmes,* 1 M.J. 128 (C.M.A.1975) (military judge accused witness of perjury); *United States v. Berry,* 6 U.S.C.M.A. 638, 30 C.M.R. 354, 359–60 (1956).

**19.** See *United States v. Hobbs,* 8 M.J. 71, 73 (C.M.A.1979) ("no hint of ... bias"); *United States v. Dock,* 35 M.J. 627, 638 (A.C.M.R.1992); *United States v. Reynolds,* 19 M.J. 529, 533 (A.C.M.R.1984), *aff'd,* 24 M.J. 261 (C.M.A.1987); *United States v. Bouie,* 18 M.J. 529 (A.F.C.M.R. 1984); *United States v. Masseria,* 13 M.J. 868 (N.M.C.M.R.1982).

**20.** We confined our analysis above to the assignment of error. However, this case has made amply clear that no good comes of such transactions, and judges should avoid them with even greater care. That much is clear from the dis-

cer off the record and in the absence of the parties, though a gaffe of professional behavior of monumental proportions did occur. It is completely clear that the military judge neither had nor seemed to have any bias on the matter, once the facts were disclosed. No person correctly informed of the events would have harbored any discomfort about this judge's impartiality. No relief is warranted.

### V. Corroboration

■■■ The victim in this case sought solace from friends who promptly called investigators. The investigators questioned Airman Foley, and he gave a statement admitting many parts of the case, including "oral sex." Airman Foley moved to suppress his statement to that extent because, he contended, that part lacked corroboration. The military judge denied the motion, and Airman Foley renews the issue on appeal.

The victim emerged from sleep to find her tee shirt above her breasts. There was a completely nude man in her bed who put her hand on his penis. When he became erect, he attempted to enter her vagina. She did not recall the "oral sex," though she did recall moistness in her vagina. When she discovered who was in bed with her, she objected and turned on the lights. It was Airman Foley. He remained in her room, dressing, until his wife arrived, searching for him.

The parties appear to agree that this issue is governed by Mil.R.Evid. 304(g), most recently discussed at length in *United States v. Rounds*, 30 M.J. 76 (C.M.A.1990), *cert. denied*, 498 U.S. 846, 111 S.Ct. 130, 112 L.Ed.2d 98 (1990). It is now very clear that not much corroborating information is required, and there is ample corroboration—even of the oral sex that the victim did not recall—to warrant denial of the

suppression motion. No relief is warranted on this assignment.

### VI. Challenge of Member

■■■ The parties conducted careful voir dire in this case, exercised their challenges, and began taking evidence on the merits. One of the members questioned during voir dire was Captain J. Neither party challenged him during the voir dire. Therefore, the opportunity to challenge Captain J peremptorily was waived. R.C.M. 912(g)(2). Later, however, a new cause for inquiry arose, and the military judge permitted new voir dire. Afterwards, the defense challenged Captain J for cause, arguing as grounds only the new cause which occasioned the late inquiry. The military judge denied the challenge. We consider only that ground for challenge.

It was the predictable and perhaps not infrequent result of the circumstances of a commander's life at a small military installation. Captain J, a commander, had a disciplinary matter in progress that involved a member of his unit, not Airman Foley, on entirely unrelated facts. The military judge gave a prudent preliminary instruction that—

> Finally, during this trial and until it is completely over you must carefully avoid any contact or communication with witnesses, with counsel, with legal office personnel, or with spectators which might create an appearance of impropriety. For example, any unrelated business that you may have with the legal office ... must be deferred until after this trial is over.

Despite that instruction, Captain J was seen conversing with a lawyer in the host legal office, regrettably one whose conduct had already been questioned during the motions in Airman Foley's trial.

■■■ Though challenges should be granted liberally, the burden of showing cause for a challenge rests with the mov-

cussion above. We note that the two lawyers who inquired were also at considerable fault for this controversy. "A lawyer shall not ... communicate ex parte with [a judge] except as permitted by law." ABA Model Rules of Professional Conduct, rule 3.5(b) (1983); *accord,* Air Force Rules of Professional Responsibility, rule 3.5 (December 4, 1989); Air Force Rules of Professional Conduct, rule 3.5 (October 22, 1992). This poses a difficult problem for military practitioners and judges, for the gulf between them has not been as wide as it is usually found to be in the civilian bar. Perhaps it should be.

ant, R.C.M. 912(f)(3), and the military judge's decision is reviewable only for abuse of discretion. *United States v. White,* 36 M.J. 284 (C.M.A.1993); *United States v. Jobson,* 31 M.J. 117 (C.M.A.1990); *United States v. Boyd,* 7 M.J. 282 (C.M.A. 1979); *but see United States v. Moyar,* 24 M.J. 635 (A.C.M.R.1987); *United States v. Deain,* 5 U.S.C.M.A. 44, 17 C.M.R. 44 (C.M.A.1954); *United States v. Mitchell,* 31 M.J. 914 (A.F.C.M.R.1990). We find no abuse here. The member's behavior was satisfactorily explained as inadvertent, resulting from his misunderstanding of the instruction, and not indicative of any unwillingness to follow instructions.

## VII. Mistrial

After findings, Airman Foley moved for a mistrial on the grounds that laughter was heard from the deliberation room, the military judge's mistake instruction was confusing, and the findings were inconsistent. The military judge denied the motion, and Airman Foley now assigns the denial as error.

▮ A mistrial is a drastic remedy to be used only to prevent manifest injustice, and other remedial measures should always be tried first. *United States v. Rushatz,* 31 M.J. 450, 456–57 (C.M.A.1990), *recon. denied,* 32 M.J. 225 (C.M.A.1990). It is a remedy within the discretion of the military judge, and relief is available only upon clear evidence of abuse of that discretion. *Id.; see also United States v. Balagna,* 33 M.J. 54, 56–57 (C.M.A.1991); *United States v. Donley,* 33 M.J. 44 (C.M.A.1991) (mistrial not required over defense objection); *United States v. Jeanbaptiste,* 5 M.J. 374 (C.M.A.1978) (witness refused to testify); *United States v. Waldron,* 15 U.S.C.M.A. 628, 36 C.M.R. 126 (1966) ("manifestly necessary").

▮ The military judge heard arguments on this motion and considered them thoroughly. We find no abuse, and no relief is warranted on this assignment. *See* R.C.M. 920(f) (waiver of objections to instructions), 923 (impeachment of findings which are proper on their face); *United States v. Emmons,* 31 M.J. 108, 112

(C.M.A.1990) (inconsistent findings); *United States v. Stone,* 26 M.J. 401, 404 (C.M.A. 1988) (laughter).

## VIII. Constitutionality of Article 125

Airman Foley recognized the similarity between his case and *United States v. Fagg,* 33 M.J. 618 (A.F.C.M.R.1991), in which this Court held that Article 125 was unconstitutional to the extent that it applied to consensual, heterosexual, non-commercial sodomy involving only adults. He asks that we set aside the conviction of sodomy on the same theory. However, during the pendency of this appeal, our decision in *Fagg* was reversed. 34 M.J. 179 (C.M.A.1992), *cert. denied,* — U.S. —, 113 S.Ct. 92, 121 L.Ed.2d 54 (1992). Accordingly, no relief is warranted.

## IX. Factual Sufficiency

▮ "The test for [legal sufficiency] is whether, considering the evidence in the light most favorable to the prosecution, a reasonable fact-finder could have found all the essential elements beyond a reasonable doubt." *United States v. Turner,* 25 M.J. 324, 324 (C.M.A.1987) (citing *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). The test for factual sufficiency is "whether, [we] are [ourselves] convinced of the accused's guilt beyond a reasonable doubt." *Turner,* 25 M.J. at 325. We have no difficulty finding ample evidence to sustain the findings as a matter of law, and we are ourselves convinced beyond a reasonable doubt that Airman Foley is guilty as the court-martial found.

## X. Sentencing Evidence

▮ During sentencing, Airman Foley called his unit commander and asked him, "Do you have an opinion as to whether [Airman Foley] has some future potential *in the Air Force?"* (Emphasis added.) Trial counsel objected, and the military judge sustained the objection but permitted the witness to answer a slightly different question, "Do you have an opinion as to whether Senior Airman Foley has rehabilitation potential?" We agree with the mili-

tary judge that the first question impermissibly sought through a euphemism to obtain the commander's opinion about whether the court-martial should adjudge a punitive discharge. That is impermissible, regardless which party asks. *United States v. Ohrt,* 28 M.J. 301, 304–5 (C.M.A.1989). There was no error.

## XI. Sentence Appropriateness

The members sentenced Airman Foley to be discharged from the service with a bad-conduct discharge, to be confined for 8 months, and to be reduced to E–1. The convening authority approved the sentence as adjudged. The sentence is not inappropriate.

The findings and the sentence are correct in law and fact, and they are—

AFFIRMED.

Senior Judge LEONARD and Judge JOHNSON concur.